## THE ARIZONAN.

(Circuit Court of Appeals, Second Circuit. March 19, 1906.)

No. 141.

SALVAGE—RIGHT OF CHARTERER TO SHARE IN AWARD.

Where a tug whose entire time and services for the day had been hired by a charterer, although not under a charter amounting to a demise, left her tows to perform a salvage service in rescuing a steamship from a burning pier, the charterer is entitled to a share of the salvage award, to be computed by comparing the value of the work done with the risk involved to the tug.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage, § 35.]

Appeal from the District Court of the United States for the Eastern District of New York.

For opinion below, see 136 Fed. 1016.

On appeal from a decree of the District Court for the Eastern District of New York, awarding the sum of $2,833.34 to the owners of the tug for a salvage service, rendered by the tug Unique in rescuing the steamship Arizonan from a burning dock in Brooklyn. The appellant, the Merritt & Chapman Derrick & Wrecking Company, was the charterer of the tug and intervened, insisting that the salvage, or at least some part thereof, should be paid to it.

Robert D. Benedict, for appellant.

Avery F. Cushman, for appellees.

Before LACOMBE and COXE, Circuit Judges.

144 F.—6

COXE, Circuit Judge. The appeal presents but a single question—Is the charterer entitled to the award for salvage, or any part thereof, or should the entire sum go to the owner of the tug?

It is not pretended that the correspondence between the parties, which constituted the contract of hiring, was a full demise of the tug; there can be no doubt, however, that on the day in question the appellant had bought, paid for and was entitled to the entire services of the tug. She was actually engaged in towing two of appellant's derricks when she discovered the fire which threatened the Arizonan. Her master abandoned the derricks, leaving them at the nearest dock, and hastened to the assistance of the steamship. The appellant was obliged to procure the services of other tugs to tow the derricks at an expense of $150, which, with the $80 paid under the charter, was actually lost to the appellant by reason of the salvage service.

It is true that several text-writers have stated the rule broadly that a charterer is not entitled to salvage unless he becomes the owner pro hac vice, but we are referred to no controlling authority to that effect and are not impressed by the rationale of the rule. The theory of salvage is to reward all who have contributed anything to the work of saving the imperiled property. Thus, it has included the risk assumed by the salving vessel, her services and the services of her master and crew not only, but it has been extended to services rendered by passengers and, in some instances, remuneration has been awarded for the risk to her cargo. There never has been any difficulty in segregating these interests and we see no reason why it may not be done even when the risk to the vessel and the services she renders are represented by different individuals.

At the time in question the appellant was entitled to the exclusive use of the tug and to every dollar she might earn during the existence of the charter. On the other hand, the appellee, not having parted with the ownership, was entitled to remuneration for any risk the tug might run while engaging in a dangerous salvage service. We are unable to see why the right to receive remuneration on account of the ownership, which was retained, carries with it the right to remuneration for the services which passed, without qualification, to the appellant. The two are as separate and distinct as are the risk to the tug and the services of her crew.

The counsel for the appellant draws an analogy between a salvage and a towing service which we regard as persuasive, especially when we consider that they are frequently so similar in character that it is difficult to draw the line of demarkation between them. For instance, if the Unique had been employed to pull off a vessel, which had grounded in the lower bay, or to tow a vessel, which had broken away from her moorings and was drifting with the tide, it will hardly be contended that the tug's owner would be entitled to pay for such services, although they have many of the elements of salvage.

When the owner of the Unique transferred, without qualification, her services to a company whose occupation was relieving vessels in distress, it seems incredible that it was the intention of the parties that whenever those services partook of the nature of a sal-

vage service the remuneration should go to the owner. The fact that the charterer would not have been liable for the value of the tug if she had been lost while assisting the Arizonan is not a controlling consideration.

This would be equally true of a towage service pure and simple, or of a towage service having some elements of salvage, as stated above, and yet, it will hardly be contended that the owner would be entitled to compensation for such services because the tug might have been lost while performing them.

The solution of the present controversy seems plain. The appellee owned the tug, the appellant owned the tug's services. She was in a dangerous occupation and for the risk so run the appellee is entitled to compensation. She did the work of rescuing the Arizonan from the burning dock and for these services the appellant is entitled to compensation.

The facts relating to the salvage are not fully stated in the record. It appears, however, that the fire was a serious one and entirely consumed the pier at which the Arizonan was moored; the tug must, therefore, have been subjected to considerable risk. Her value is not stated, but it appears from the proof that she was a large and powerful harbor tug and that her services were efficient, protracted and successful. Taking all the circumstances into consideration we are of the opinion that the award should be divided equally between the parties. Such a disposition of the controversy recognizes the rights of both owner and charterer and does substantial equity to all.

The decree is reversed without costs and the cause is remanded to the District Court with instructions to proceed in accordance with this opinion.