THE KANAWHA.

THE CAMINO.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

No. 24.

1. SALVAGE ⬅38—RIGHT UNDER CHARTER PARTY.

Provisions of a charter of a vessel *held* to make a charterer a joint adventurer with the owner in any salvage service undertaken by the master, and to require the charterer to pay for coal and charter hire while it was being rendered.

2. SALVAGE ⬅51—AWARDS—APPEAL.

The appellate court can reduce or increase salvage awards of the trial court; but, as they are matters of discretion, practice is not to interfere when trial judge has correctly found facts, even if the appellate court disagrees with him as to amount, unless it be such as to indicate abuse of discretion.

3. SALVAGE ⬅26—AMOUNT AWARDED—EXPENSES.

Expenses may be included in a salvage award, or added to the award, as the court sees fit; these being matters of discretion, depending upon the circumstances of each case.

4. SALVAGE ⬅26—AMOUNT AWARDED—EXPENSES.

Where, under the charter party, the charterer was a joint adventurer with the owner in any salvage service undertaken by the master, and bound to pay for coal and charter hire while it was being rendered, *held*, that the cost of the time employed in the salvage service was an expense, the same as the coal, and, being a direct expense to the charterer, should be added to the salvage award, as was the expense for coal.

5. SALVAGE ⬅26—AMOUNT AWARDED—EXPENSES.

A charterer of a vessel, which performed salvage service, *held* not entitled to recover the cost of feeding a cargo of horses during the time they were awaiting the arrival of the vessel which was to transport them; such expense being too remote.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Furness, Withy & Co., Limited, owner, and R. Laurence Smith, Incorporated, charterer, of the steamship Kanawha, against the steamship Camino, her cargo and freight, claimed by the Western Steam Navigation Company. From the decree, libelants appeal. Remanded, with instructions to modify the decree.

Harrington, Bigham & Englar, of New York City (D. Roger Englar and T. Catesby Jones, both of New York City, of counsel), for appellant Furness, Withy & Co., Limited.

Austin, McLanahan & Merritt, of New York City (Willard U. Taylor and Alfred H. Strickland, both of New York City, of counsel), for appellant R. Laurence Smith, Inc.

Kirlin, Woolsey & Hickox, of New York City (J. Parker Kirlin and Mark W. Maclay, Jr., both of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. January 14, 1915, about 4 p. m., the American steamer Camino, built of steel, bound with cargo to Rotterdam as

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a Belgian relief ship, met a violent storm, which disabled her rudder and put her entirely out of control. The port side of the forward end of her amidships house was smashed, and a strongback running fore and aft on top of the tarpaulins on each hatch, No. 1 and No. 2, was carried away, but the cargo was substantially undamaged, and the steamer was thereafter sound and water-tight, except for one or two slight leaks in the forward peak.

January 15, about noon, the steamer Ocean Monarch hove in sight, and the Camino hoisted her flag upside down as a signal of distress. January 16 the Ocean Monarch, which had no towing hawser, took on board the Camino's manilla hawser, 120 fathoms long, which parted at the middle after towing about 15 minutes. The Ocean Monarch stayed by and subsequently signaled that she would proceed on her voyage unless the master and crew would abandon the Camino, but at the request of the master of the Camino continued to stand by until the next morning. In the meantime the Camino had got into wireless communication with the British steamer Kanawha, bound in ballast to New York, which promised to come to her aid. The Ocean Monarch proceeded on her voyage.

January 17, about 6 a. m., the Kanawha arrived. She was owned by the libelant Furness, Withy & Co., Limited, and was chartered to the libelant R. Laurence Smith, Incorporated. She was the second vessel to come to the relief of the Camino, and stood by through the whole proceeding. Her master undertook to tow the Camino to Halifax, about 385 miles northwest of the point at which he picked her up. The great difficulty of towing was that the Camino was deep in the water, whereas the Kanawha was very high out of the water, and so was blown further to leeward and unable to keep in line. This gave a bad lead of the hawser and great strain on it. After two attempts, the master of the Kanawha succeeded in passing her own 4-inch steel hawser to the Camino; but it parted immediately and seems to have been in bad condition.

January 18 the Kanawha took on board the Camino's 12-inch manilla hawser, which parted in a very short time.

January 19 the small steamer Lady Laurier, belonging to the Dominion of Canada, arrived and passed a hawser to the Camino's stern, so that she could act as a rudder. After the Kanawha had towed for eight hours, the hawser parted again.

January 20 the United States revenue cutter Androscoggin, a small steamer, arrived and passed her hawser to the Kanawha, which was taken aboard the Camino and parted on the 21st at 1 p. m.

January 21, at 5 p. m., the Androscoggin took the Camino in tow until January 23 at 8 p. m. when she left on account of the weather, and the Camino drifted.

January 24 the Kanawha towed from 9:20 p. m. to 9 a. m. of January 25, when the hawser parted. The Lady Laurier then towed until 4 p. m. when the hawser parted. The Camino anchored about six or seven miles from the entrance to Halifax harbor. On the morning of January 26 the Camino was towed into the harbor by several tugs.

The weather was very bad on January 17, and also on the night of

the 24th; the Camino's boilers being out of commission for five hours on that day. The rest of the time the weather was moderate. There was no great danger to the Camino, and very little to the Kanawha. The master of the Kanawha rendered the services promptly and skillfully, and the officers and crew performed them heartily, with some danger and a good deal of exposure.

The foregoing is an outline of the services rendered by all the vessels, omitting many details. All the salvors seem to have been necessary to the result. The Ocean Monarch and the tugs have been paid, either in pursuance of a judgment of the court in Nova Scotia or by compromise, to an aggregate sum of $4,650. The Lady Laurier and Androscoggin being government property, no claim was made for their services, and what they did is to be considered only for the purpose of fixing the value of the entire service.

The District Judge found $34,650 to be the proper compensation for the whole service; the unpaid balance of $30,000 to be apportioned, $9,000 to the Androscoggin, $3,000 to the Lady Laurier, and $18,000 to the Kanawha, $4,500 thereof to go to the master and crew.

[1] The charter of the Kanawha was not a demise, and it contained the following articles:

"2. That the charterers shall provide and pay for all the coals except as otherwise agreed. * * *

"15. That in the event of the loss of time from deficiency of men or stores, fire, breakdown, or damages to hull, machinery, or equipment, grounding, detention by average accidents to ship or cargo, dry-docking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by defect in or breakdown of any part of her hull, machinery, or equipment, the time so lost, and the cost of any extra coal consumed in consequence thereof, and all extra expenses shall be deducted from the hire. * * *

"19. That all derelicts and salvage shall be for owners' and charterers' equal benefit, after deducting owners' and charterers' expenses and crew's proportion. * * *

"31. Except for loss of time arising as provided in article 15, hire shall continue hereunder notwithstanding any detention of said vessel by reason of restraints of princes, rulers or peoples, the act of God, enemies, fire, or any other cause whatsoever."

The effect of these provisions was to make the charterer a joint adventurer in any salvage service undertaken by the master of the Kanawha, and bound to pay for coal and charter hire while it was being rendered. The District Judge held that both these items were expenses which the charterer was entitled to recover, but awarded the value of the coal to it in addition to the salvage award, while he deducted the charter hire from the award.

[2-4] There can be no doubt whatever of our right either to reduce or increase salvage awards of the District Court; but, as they are matters of discretion, our practice has been not to do so when the District Judge has correctly found the facts, even if we disagree with him as to the amount, unless it be such as to indicate an abuse of discretion. We cannot say so in this case.

The value of the Camino, deducting the cost of repairs at Halifax,
$25,823.46, was ......................................................$289,376.54
Of the cargo .............................................................. 248,492.00

Aggregating ..........................................................$537,858.54

The value of the Kanawha was $250,000.

The parties have recognized the right of the charterer to intervene as a party pro interesse suo, and the court has allowed it a recovery for the coal and charter hire. Expenses may be included in the award or added to the award, as the court sees fit. These are all matters of discretion, depending upon the circumstances of each case. In this particular case the District Judge allowed both the cost of the coal and the cost of the time employed in the service. We see no difference between them. Both were expenses which would not have been incurred, but for the delay of 10 days occupied in performing the salvage services. Therefore in this particular case, while adopting the items and amounts as found by the District Judge, we will allow the item of charter hire as a direct expense, like the item of coal payable to the charterer, and add it to, instead of deducting it from, the salvage award.

Let the decree be as follows:

Salvage ......................................................$18,000.00
Owner's expenses .............................................. 1,960.47
Charterer's expenses .......................................... 7,257.35
Costs ....................................................... 379.45

Total ....................................................$27,597.27
Deducting from this amount—
For the master and the crew...........................$4,500.00
For the owner's expenses................................ 1,960.47
For the charterer's expenses............................ 7,257.35
For costs ............................................... 379.45
————— 14,097.27

The balance of...........................................$13,500.00

—to be equally divided between the owner and the charterer.

[5] The charterer also claimed to be entitled to recover $6,600, the cost of feeding a cargo of horses for 10 days awaiting the arrival of the Kanawha, to be transported to Bordeaux. The District Judge regarded this as too remote, and we think he wisely exercised his discretion in rejecting it. If it were a real loss to the charterer, it was not such a direct contribution by it to the salvage operation as required it to be treated as a recoverable expense.

The cause is remanded to the court below, with instructions to modify the decree in accordance herewith; costs of this court to the appellants.