## THE BUCKHANNON.

(District Court, S. D. New York. December 13, 1922.)

Salvage ⚖=34—Award for services to disabled steamship at sea.

A salvage award of $28,000, and expenses made to the steamship Ablanset for services rendered in the Atlantic to the steamship Buckhannon, which was short of coal and provisions and wholly disabled to make a port. The Ablanset went 125 miles to her assistance on call and towed her 500 miles to Bermuda at a loss of time of 8 to 10 days, but without serious danger; the Buckhannon, during part of the time burning cargo to operate her pumps. The Buckhannon and cargo were worth $578,000, and the Ablanset about $1,000,000.

In Admiralty. Suit for salvage by the owner of the steamship Ablanset against the steamship Buckhannon. Decree for libelant.

Libel for salvage by the owner of the steamer Ablanset against the steamship Buckhannon for services rendered in the Atlantic in the month of March, 1920. The facts as developed on the trial are as follows:

On March 2, 1920, the steamer Ablanset, owned by the libelant, of 3,545 gross tonnage, was bound west on the low-powered route, with a mixed cargo, from Lisbon to New York. In latitude 36° 30′ N., longitude 54° W., she received a wireless message from the steamship Buckhannon, stating that she was without fuel and short of provisions, and asking for assistance. The Buckhannon was a composite steamer, likewise loaded with a mixed cargo and bound west for New York. At the time of sending her message she was in 37° 36′ N., 54° 22′ W., something over 100 miles away. She had cleared from the port of Messina on February 4, 1920, bound for New York, with a general cargo, and left Gibralter on February 14th with 400 tons of coal. Shortly thereafter, for some reason not explained, she was forced into Santa Cruz, in the Canaries, to restock her ship's stores, whence she cleared on February 21st. On the low-powered west-bound route she met no misadventure until March 2, at which time she encountered a strong southerly gale, with rough seas, and it was then found that she had only about 2½ days' supply of coal remaining, together with short provisions. In this predicament she sent out a wireless call for help.

Receiving this call on the evening of the 2d at 9:25, the Ablanset put about to the northward and picked up the Buckhannon at about 7 p. m. on the evening of the 3d. She could do nothing that night, owing to the wind and sea, but by morning, the weather having moderated, it was thought possible to undertake a tow. The ships rolled heavily, but the Ablanset successfully drifted down a cable upon the distressed vessel, and at about 9:45 a. m. began to tow her, without success, since the cable parted in about half an hour. A second effort was made in the afternoon, at which time the sea was somewhat quieter. Again a wire cable was hove on board the Buckhannon, but parted after about an hour and a half. In the evening the wind increased to

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

about 8 on the Beaufort scale, and it blew too hard on the morning of the 5th to pass a line between the steamers. In the afternoon the Ablanset, with a Lyle gun, fired a line across the Buckhannon's bows, but the projectile parted from the messenger and the effort was given up. The wind increased to a strong gale on the evening of the 5th, before which the Ablanset was obliged to run, losing the Buckhannon for the time being. On the early morning of of the 6th, the wind moderating, the Ablanset put about and found the Buckhannon at about 10 a. m.

The sea having then moderated along with the wind, no difficulty was experienced in heaving on board a cable, and the steamers started for Bermuda at about 7:15 on the evening of the 6th. On the morning of the 7th it was necessary to stop to adjust the cables, and again on the afternoon of the 10th, when the knighthead of the Buckhannon carried away under the strain. At times the sea was heavy, but as a whole the trip was easy and without incident. The Ablanset sighted St. David's Light, Bermuda, at 8:35 on the evening of the 10th, and lay to that night off the harbor, delivering her tow in the Five Fathom Hole at 9 a. m. on March 11th, when the services ended. Some time before their conclusion the Buckhannon had used all her coal and was firing her pumps with her cargo, which consisted in part of table nuts. It was necessary to do this because owing to her helpless condition and the heavy weather on the 4th and 5th she sprang a leak on the morning of the 6th. How serious this was is uncertain, but it much disturbed the master of the Buckhannon, who in his protest says that on the 6th the pumps were just able to control it.

The value of the Buckhannon was $235,000, and her cargo $343,000, a total of $578,000. The value of the Ablanset was about $1,000,000. The distance towed was 506 miles; the Ablanset had to travel 135 miles to reach the Buckhannon. The total distance traveled by the Ablanset is estimated at over 150 miles more. By reason of the salvage the Ablanset, which reached Quarantine on the very early morning of the 15th, lost about eight to nine days' time; her master put it at ten days.

Leslie P. Scott, for the Ablanset.

Delancey Nicoll, Jr., and I. A. Rabinow, both of New York City, for master and crew of the Ablanset.

Herbert K. Stockton, of New York City, for the Buckhannon.

T. Catesby Jones, of New York City, for the cargo of the Buckhannon.

LEARNED HAND, District Judge (after stating the facts as above). The Ablanset was not in appreciable danger. True, it was necessary to keep away from the Buckhannon when she went up to windward and drifted down the lines. Presumably she was drifting faster (Knight, p. 604), and must be alert not to get too close; but, barring an accident to her engines, there should have been no danger in this. Nor do I take very seriously the danger she was in of running out of oil. She had enough and to spare to run from the Bermudas to New York after her services were over.

Again, I see no danger to the crew. Perhaps it is fair to suppose that there is always a danger in working about cables under tension; but they generally break outboard, or at the chock, and then no one is injured. The work of repairing the broken gear was indeed exacting, especially under the conditions in which it was done, but scarcely dangerous. On the whole, I cannot see that either ship or crew were called upon to suffer more hazard than is inherent in an Atlantic voyage at that season.

On the other hand, I regard the Buckhannon as in the most real danger. She was wholly disabled and was short of rations. It makes no difference that she was near the westward low-powered route. If she had been towed in by another vessel, the award would have been substantially the same. Early help she needed, else the crew would have had to abandon the ship. Besides, another such blow might well have further opened her seams and put the leak beyond control of the pumps, even if the nuts held out to burn.

The salvage was well done, without any substantial injury to the salved vessel; the salvor's loss of time was considerable; the property salved was very substantial; the award should be adequate. The nearest cases are The Melderskin (D. C.) 249 Fed. 776, The Kanawha, 254 Fed. 762, 166 C. C. A. 208 (C. C. A. 2d), The Western Pride (C. C. A.) 274 Fed. 920, and The Varzin (D. C.) 180 Fed. 892, affirmed 185 Fed. 1007, 107 C. C. A. 398 (C. C. A. 2d). In The Melderskin, The Varzin, and The Western Pride, the salved values were very much higher, and I cannot accept them as proper guides. The Kanawha is a closely parallel case, except that the towage was shorter. Frankly, that award seems to me a full one, nor should the affirmance of it be taken as anything more than that it was within permissible limits. An award of $25,000 would as certainly have been affirmed as that of $30,000. Nevertheless, it is true that there is a close parity between the cases, and, of course, one should not reduce the awards in The Varzin and The Melderskin, strictly in proportion to the values here at bar.

There seems to me no advantage in pretending to follow precedent in salvage cases, any more than between verdicts for personal injuries. I cannot help feeling that an award of $28,000, with expenses, will be enough to stimulate that willingness to assist a distressed vessel which it is the purpose of the law to secure. I understood that it was conceded that the master and crew should get of this one-quarter, to be divided in proportion to their pay.

Therefore the award will be $28,000 and expenses; one-quarter to master and crew. Settle decree on notice.