**CASTNER, CURRAN & BULLITT, Inc., v. UNITED STATES.**

(Circuit Court of Appeals, Second Circuit. February 2, 1925.)

No. 196.

1. **Salvage ⬅48—Respondent's affidavit as to indebtedness of charterer to respondent, erroneously considered.**

In libel by owner of vessel for salvage, in which there was no proceeding before a commissioner to assess or estimate an award, and in which the value of the service had been agreed on, there was nothing left for the court to do but to allocate the shares of the various parties entitled, all of whom were represented by libelant, and it was error for court to consider affidavit setting forth indebtedness of charterer of libelant's vessel to respondent, since such affidavit was not a pleading and was not entitled to consideration as evidence.

2. **Admiralty ⬅36—Government as respondent in libel for salvage could not counterclaim for breach of other contract or for taxes.**

In libel under the Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l) against the United States as owner of vessel for salvage, the government could not counterclaim for breach of other contract or for taxes, since in admiralty counterclaim must arise out of same contract or cause of action for which original libel was filed under Admiralty Rule No. 50.

3. **Salvage ⬅1—"Salvage" defined.**

"Salvage," in its simple character, is the service which those who recover property from loss or danger at sea render to the owners of that property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salvage.]

4. **Salvage ⬅38—Charterer a joint adventurer with owner in respect to salvage services performed by chartered ship, where rights are defined by agreement.**

Where charterer's rights as to salvage are defined by agreement between the parties, the charterer cannot rise to a higher position than that of being a joint adventurer with owner in respect of salvage services performed by chartered ship.

5. **Salvage ⬅38—Entry of decree in libel for salvage by owner on behalf of other persons, as if they were prosecuting claims independently, held error.**

Where agreement between owner and charterer provides that salvage is to be for the parties' "equal account," and that "settlement of same to be arranged for by owner," it was error for court, in libel by owner on behalf of all other persons interested, to enter decree as if officers and crew, owner, and charterer were each prosecuting their claims independently.

6. **Salvage ⬅46—Owner may bring proceeding in own name on behalf of other persons interested in salvage recovery.**

Owner may bring libel under Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l) for salvage in own name on behalf of all other persons interested in salvage recovery, especially where charter party provided for settlement of salvage by owner.

7. **Salvage ⬅38—Owner and charterer may adjust rights in salvage recovery by execution of off-hire certificate.**

Owner and charterer may adjust rights in salvage recovery by owner's execution to charterer of off-hire certificate without objection thereto from owner of ship liable for the salvage.

8. **Salvage ⬅43—Respondent not entitled to turn amount of salvage into court.**

In libel under the Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼l) by owner for salvage in own name on behalf of other persons interested in salvage recovery, respondent was not entitled to turn amount of debt into coffers of court and leave creditors subject to expense and delay of getting it out of court, rather than from reputable proctors of their own choosing.

Appeals from the District Court of the United States for the Southern District of New York.

Libel by Castner, Curran & Bullitt, Inc., against the United States. From the decree rendered, both parties appeal. Decree modified.

This is a proceeding under the Suits in Admiralty Act (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼*l*), in which libelant elected to "proceed in accordance with the principles of libels in rem." Section 3 (section 1251¼b).

The suit therefore is to be regarded, so far as its legal rules are concerned, as one in which the libelant sues as owner of steamship Glen White and the United States appears as the owner of steamship Wathena. The cause of action is for salvage, of a very meritorious nature. Wathena, while at sea, broke down by losing two blades of her propeller and breaking off the lower pintle of her rudder. She sent out radio messages for assistance, requesting a tow, and the Glen White aided her. The latter vessel deviated from her course in order to render assistance, took Wathena in tow, after some delay owing to the weather, and spent eight days and some hours in successfully towing the injured vessel to the Azores.

At the time of service rendered, the Glen White was under a time charter to Burtner Coal Company, and by that instrument it was provided that charter hire should be paid in advance, and also "that all derelicts and salvage shall be for owner's and charterer's equal account, including expenses incident thereto, and settlement of same shall be arranged for by owners."

This libel was filed by Castner, Curran & Bullitt, Inc., as owner of the Glen White, and no other libelant. Nor did any person attempt at any time to intervene pro interesse suo, but the owner sued as is specifically declared in the libel, not only on its own behalf but on behalf of Burtner Coal Company and of the officers and crew of the Glen White.

The United States never answered herein, but it did execute a stipulation agreeing that the "reasonable value of the salvage service rendered" was $42,500.

The stipulation further agreed that the libelant was actually out of pocket for coal, provisions, etc., by reason of rendering the salvage services aforesaid, to the amount of $8,596.15. Also, that the value of Glen White's time expended in the salvage service was $22,520.50. That is, the charter hire was accepted as a fair measure of time value.

Finally, it was stipulated that the libelant as owner of Glen White has "allowed to the charterer an off-hire credit" for the time devoted to the salvage service, and that the statements of the libel were true.

On this libel and stipulation libelant moved for final decree, whereupon the United States filed the affidavit of an official to the effect that the charterer, Burtner Company, was indebted to the government for damages for breach of contract and for taxes in a sum greatly exceeding the salvage award. To this affidavit libelant duly objected, but the court accepted it, and entered decree awarding to libelant:

| | |
|---|---:|
| (1) Its out of pocket expenses | $ 8,596.15 |
| (2) "Salvage money" (so called in decree) | 1,453.75 |
| (3) The crew's share of award | 8,475.96 |
| Total | $18,525.86 |

Decree says nothing at all about the balance of the $42,500, but it is ascertainable from other sources that the intent was to leave it with the United States because the charterer owed the government so much.

Finally, decree impounds the officers and crew's share in the registry of the court, there to remain until they severally appear and on notice to the United States attorney claim their several shares.

From this decree the government appealed because libelant got anything except $1,453.75, and libelant appealed because the entire sum had not been awarded to it.

William Hayward, U. S. Atty., and Glen R. Snider and Horace T. Atkins, Sp. Asst. U. S. Attys., all of New York City.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Edwin S. Murphy, Ira A. Campbell, and L. de Grove Potter, all of New York City, of counsel), for libelant.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It was pointed out in United States v. Cornell Steamboat Co., 202 U. S. 184, 26 S. Ct. 648, 50 L. Ed. 987, that a claim for salvage of government property did not arise upon contract, and yet was one that would be entitled to redress in the admiralty court if the United States were suable therein.

The injustice thus recognized has been partially remedied by the Suits in Admiralty Act; wherefore the decree below having been vacated by the appeal (The John Twohy, 255 U. S. 77, 41 S. Ct. 251, 65 L. Ed. 511), we consider this record exactly as if the Wathena had been seized under process in rem, and the United States had in the ordinary way claimed her.

[1] We first observe that the court below erroneously received and considered the affidavit setting forth the indebtedness to the

government of the Burtner Company. That affidavit was not a pleading, nor was it entitled to be considered as evidence. There was no proceeding before a commissioner to assess damages or estimate an award; the value of the service had been agreed upon, and there was nothing left for the court to do except to allocate the shares of the various parties entitled, all of whom were represented by the libelant.

Without this affidavit there is nothing in the record to suggest the United States as having any standing herein except to pay what was admittedly due to somebody, and to make such payments in manner and form as the court might decree; its only interest in that decree was to see that it was drawn so that payment would extinguish all and every part of the demand set forth in the libel.

[2] But if this procedural error be overlooked, the government could not in any way successfully counterclaim for breach of another contract or for taxes against any libelant suing for a salvage award; and this because in the admiralty there can be no such thing as a counterclaim unless it arises "out of the same contract or cause of action for which the original libel was filed." Admiralty Rule 50; United Co. v. New York Line, 185 F. 386, 107 C. C. A. 442.

The matter at bar is not unimportant, because the decree below and the argument here for the United States seem to show a quite complete lack of appreciation of the inherent nature of salvage and of a suit for an award.

[3] Without going into the refinements which have arisen in a world whose increasing complexity has affected shipping, "salvage in its simple character is the service which those who recover property from loss or danger at sea render to the owners" of that property. This and many other definitions of salvage are collected approvingly in Cope v. Vallette Drydock, 119 U. S. 625, 7 S. Ct. 336, 30 L. Ed. 501; and in all the definitions and inherent in the nature of the act is the idea of service.

How peculiarly the service of salvage is personal, and how peculiar it is, has never been better illustrated than by the fact that seamen who were slaves, who labored with and on their ship to render salvage, were held, notwithstanding their slavery, entitled "to receive their portion of salvage as mariners for their own separate use." Small v. The Messenger, Fed. Cas. No. 12961, 2 Pet. Adm. 284.

Thus carefully has the mariner's share of the salvage award been preserved in the admiralty courts, because it is a reward for peculiar and personal services. Yet the main service—since no number of mariners could in the ordinary case be of assistance were it not for their ship—is rendered, and must always be rendered, by the owner's ship. Therefore in the main, and in the majority of cases of which this is one, the foundation on which the suit rests is the service rendered by the libelant-owner's ship.

It follows that when investigating the parties to such a cause, the leading inquiry is whose was the ship that rendered the salvage service? For the owner of that ship is the person normally entitled to sue. Such owner may be one pro hac vice, but that point is not here present; for though the Glen White was under time charter, it was one of the ordinary kind and did not constitute a demise of the vessel nor make the charterer (Burtner Company) owner pro hac vice. Clyde Co. v. West India Co., 169 F. 275, 94 C. C. A. 551.

It follows that the rights of Burtner Company as charterer arise solely out of a contract contained in the charter party. They are derivative rights, derived from the owner's right to be compensated for the service of his ship.

[4] Doubtless under many circumstances a charterer is equitably entitled to some share in the owner's salvage award, absente any express contract, of which an instance is The Arizonan, 144 F. 81, 75 C. C. A. 239. But when defined by agreement inter partes the charterer can never rise to a higher position than that of being a joint adventurer with the owner in respect of salvage services performed by the chartered ship. The Kanawha, 254 F. 762, 166 C. C. A. 208.

There is here such an agreement between owner and charterer, and it is observable that by the terms thereof salvage is to be for the parties' "equal account," but that "settlement of same to be arranged for by owner."

[5] In this state of law, and under the foregoing agreement between owner and charterer, the decree below has been entered as if the officers and crew of the Glen White, the owner of that steamer, and the charterer thereof were each prosecuting their claims independently under the libel filed. This we think a wholly erroneous view to take of the situation.

[6] The Suits in Admiralty Act contemplates, as we have now fully pointed out, an ordinary suit in admiralty for salvage. Such a suit is ordinarily properly and fully, according to the course and practice of admiralty, brought by the owner, who may, as

he has done here, sue in its own name on behalf of all the other persons interested in the salvage recovery. The Flottbek, 118 F. 954, 55 C. C. A. 448. Even if the libelant had not in terms sued on behalf of the crew, it is understood that the court will intervene in behalf of those wards of the admiralty. They may appear separately, like any other person, pro interesse suo; but their omission from the libel would not even have been good ground for exception. The Camanche, 8 Wall. 448, at 476, 19 L. Ed. 397. So far as charterers are concerned, the very provision of the charter party above quoted empowered, if it did not require, the owner to proceed to recover that salvage for common account, and on recovery the "settlement of same (would be) arranged for by owner."

Thus in this case every party having any interest in the award was present and presented to the court, but properly and lawfully so presented by and through the owner, who was the single libelant.

If any of these parties in interest had refused to proceed, it is true that such refusal would have inured to the benefit of the owners of the salved property (The Blackwell, 10 Wall. 1, 19 L. Ed. 870); but there is no such refusal. The respondent had no one else to deal with but the owner, and what the owner would do with or about the division of the award was no business of respondent; the government would get an acquittance, and that was enough.

The application to the court for allocation of award was between the court and the libelant, and merely to secure libelant from future demands for an accounting at the hands of those whom it represented. But inasmuch as this appeal relates to the form of the decree, we must consider the rights of the parties libelant among themselves.

Castner gave Burtner an "off-hire" certificate covering the period of salvage service. The charter terms of hire are that it was to begin on delivery of ship, was to be paid monthly in advance, and should a monthly pay day occur when the vessel was on her voyage to the port of redelivery, an estimated payment should be made, and when delivery accomplished "any difference shall be refunded by steamer or paid by charterers as the case may require." In other words, hire was to be finally adjusted between the parties as of the redelivery date.

[7] Under such a bargain, the off-hire certificate necessarily operated as a grant or extinguishment of just so much charter hire; on redelivery the owners could claim and charterers would pay just so much less money and the owner would be "out" just that much hire. This was a fair bargain; no reason appears why charterers should object, for it saved them that much present cash, while the snail-like course of this suit (now nearly five years old) has shown (what experience would have forecast) how much better was an off-hire allowance in hand than was a claim for reimbursement in salvage against the United States. But the overwhelmingly important thing is that the parties agreed on this arrangement of their own affairs under their own contract; so that when they all went to court the expense of the ship while salving lay solely on the shoulders of this libelant—no one else was out a farthing.

It is not legally open to any respondent to quarrel with this adjustment of rights inter sese; still less is such a course open to one who did not and could not advance a counterclaim.

The disposition made below of the award to the crew is unusual and irregular. We have pointed out the right of the owner to sue on behalf of the crew; we have indicated the right of the crew if they desired to intervene with independent representation; no such intervention has taken place; the proctors for the owners are the proctors for the crew, in legal effect chosen by the crew. Yet these proctors are forbidden the rights of proctors from time immemorial, are required to furnish a list of what their clients are entitled to, and then left to see their own clients put to expense and difficulty of getting what they can out of the court registry on notice to the United States attorney, who is the proctor for the respondent.

[8] This is the vice of the proceeding: the United States owes this money to the crew, and it has no right in an admiralty suit to turn the amount of its debt into the coffers of the court and leave its creditors subject to the expense and delay of getting it out of the court rather than from reputable proctors of their own choosing.

Let the decree below be modified so as to declare the allocation of the award as follows:

To the libelant for expenses of salvage, including the value of the use of the ship.....................$31,116.65
To the libelant for distribution in proportion to their several wages, to and among the crew as set forth in the libel......................  8,475.96
To the libelant to be by it accounted for with the charterer pursuant to the provisions of the charter party  2,907.49