ROBERT R. SIZER & CO. v. CHIARELLO BROS., Inc., et al. (F. JARKA & CO., Inc., Impleaded). THE LENA. CHIARELLO BROS., Inc., v. ROBERT R. SIZER & CO.

District Court, E. D. New York. March 12, 1929.

Macklin, Brown, Lenahan & Speer and Paul Speer, all of New York City, for libelant.

William F. Purdy, of New York City, for Chiarello Bros., and lighter Lena.

Burlingham, Veeder, Masten & Fearey and A. Howard Neely, all of New York City, for F. Jarka & Co.

INCH, District Judge. The above two suits were tried together and may be decided in one opinion. The facts are the same in both suits.

In substance it appears that in October, 1925, the Sizer Company expected a shipment of lumber on board a steamship to arrive in this port, and when the ship had arrived at pier 6, New York dock, Brooklyn, it made certain arrangements with the respondent Chiarello Bros. Just what these arrangements were does not appear, either in the pleadings or at the trial. All that appears from the testimony is that the traffic manager of the Sizer Company "made arrangements with Chiarello Bros.," by which the latter was to unload this lumber from the steamship on a lighter "in a safe and orderly manner and unload on the dock of the Tisdale Lumber Company"; that he gave Chiarello Bros. "a letter of instructions to lighter the cargo." This letter was not introduced in the evidence.

Accordingly, all that I have before me as to these arrangements is that Chiarello Bros. was to take the lumber from the ship onto its lighters, and carry it to the Tisdale Lumber Company dock, and there unload the lighters. This would have to be done in a reasonably safe and proper manner.

It was plainly a contract, in addition to the loading and unloading of the lighters, to convey the lumber from the side of the steamship to the Tisdale Lumber Company dock. Upon making this arrangement with the Sizer Company, Chiarello Bros. hired a stevedore concern, F. Jarka & Co., to do the actual work of unloading the lumber from the ship onto the lighters. The Sizer Company had nothing to do with this subcontract, so far as I can see from the testimony.

At the time in question Chiarello Bros. had a lighter placed beside the ship, and

the Jarka concern proceeded to unload the lumber from the steamship and place it upon this lighter. The lumber was placed in three separate piles, fore and aft, one forward, one midship, and one aft, and approximately every two feet was a binder, crosspieces, in order to keep them bound together. It was piled 2 feet high and then a binder, until the total height of these piles reached 12 or 14 feet. There was nothing unusual about this method of stowing the lumber on the lighter. From the testimony, it was the usual, proper, and reasonably safe method.

The loading of this lighter was completed later in the afternoon and that same evening the captain of the lighter signed the delivery book. He testified that the lighter was "loaded and stowed to his satisfaction"; that, if he had not been so satisfied, "I would have made a kick." The lighter herself was in good condition, had but recently been overhauled, and in every way appears to have been seaworthy.

At the time the lighter lay alongside the ship she was safely secured by four lines, two spring lines and two breast lines. The breast lines were 3½ inches; the spring lines, 5½ inches. She was lying bow in, near the stern end; was almost even with the propellor of the ship. She was inside the slip.

About 11 o'clock that night her master retired for a little rest, and about half past 4 or 5 in the morning he felt the boat slamming backwards and forwards against the ship. He states that "through the night you get a few bumps more or less, but this was so hard I went to the door to see what happened." What he saw was heavy swells coming from a steamer, which at that time was about 200 yards away, going towards New York Harbor; "it looked like a Sound freighter." These swells caused the lighter to roll, and her master states the lumber hit against the ship, and "it happened all at once; part went one way and part the other." "The bow line, breast and spring line, broke."

The lighter shipped about 2 feet of water in the forward hatch when she rolled. After the swells subsided, no more lumber fell off. Most, if not all, of this lumber stayed in the slip, and was thereafter recovered; the work starting about half past 7 or 8 o'clock that morning. The lumber was then taken by the lighters to the Tisdale Lumber Company dock.

The above facts form the basis for these two suits. The Sizer Company claims in its libel that Chiarello Bros. broke its contract, in that it failed to deliver all the lumber received from the ship, and also that some of the lumber, when received, had been damaged. Chiarello Bros. impleaded the Jarka concern on the theory that, if there was any such liability, it had been caused by it.

I am satisfied that the Jarka concern performed their work in a satisfactory way and without fault. I also am satisfied from the testimony that what caused the lumber to go overboard was the possible negligence of those navigating the steamer, thus causing damage by its swells. The petition should be dismissed.

This leaves us the liability, if any, of Chiarello Bros. to the Sizer Company. As I have said, I cannot tell what the exact arrangement was between Sizer Company and Chiarello Bros., and have to decide according to the record. All the record shows is that Chiarello Bros. undertook the unloading of this lumber onto a lighter and stowing it on her deck, all to be done in a reasonably safe and proper manner, and then further agreed to carry it and unload it at the Tisdale Lumber Company dock with the same degree of care. It employed Jarka to do this work at the side of the steamship, and this company did its work properly.

We now come to the question of whether or not libelant has proved any liability on the part of the respondents. There was no witness produced who saw the lumber and could testify that it was damaged. There is some opinion testimony, but in substance all that is shown is that the aforesaid traffic manager, the following morning, looked at the water in the slip, and that this water seemed to him to be "oily." Other witnesses were produced whose testimony casts a doubt on even this. In other words, it is left for me to guess that, because the lumber was for a short while in the water of the slip, it was damaged. This is pure speculation. I find no proof of damage.

As to nondelivery of a portion of the lumber, while there is slightly more proof, yet it is possibly sufficient to show a loss. I do not consider Libelant's Exhibit 1, a receipted bill for the lumber delivered, in itself, to be sufficient evidence; but, taken in connection with the other testimony, particularly that of Smith, the captain of the lighter, who testifies that, roughly speaking, 100,000 feet went off, and that "about 15,000 feet were put back on his lighter" (there were other lighters), together with the other circumstances shown, I find that there was some loss.

This loss was occasioned by the negli-

gence or action of a third party, to wit, the steamer that passed down the river. The accident was something over which the respondents had no control.

The basis for liability under such circumstances, and aside from the burden of proof, which was fully met, is not found in the rigid rules applicable to a common carrier. Chiarello Bros., on the proof before me, was a bailee for hire. There is no proof that the arrangements in question were but a second step in connection with the steamship. Colton v. New York, etc., S. S. Co. (C. C. A.) 27 F.(2d) 671, and cases cited.

■ Chiarello Bros., as such bailee, was not an insurer. It was liable only for negligence. The Sheffer (C. C. A.) 249 F. 600; The Wildenfels (C. C. A.) 161 F. 864; In re Steamship Co. Norden (D. C.) 6 F.(2d) 883.

■ An explanation was required from the bailee even by the slight proof offered by libelant. 6 C. J. 1158, § 160. Such explanation and proof had been given, and a reasonable cause for the loss, if any, shown. This proof eliminates from the case any negligence on the part of Chiarello Bros. or Jarka. In my opinion, therefore, there has been no liability shown on the part of the respondents, and the libel should be dismissed.

As to the cross-libel brought by Chiarello Bros. against Sizer & Co., although the facts found by me are the same, a somewhat different situation exists. Chiarello Bros. claim that, because the lumber went overboard, it was compelled to go to some expense in replacing the lumber on the deck of the lighter; in other words, that it "salvaged" the lumber for Sizer & Co., and that therefore it has a claim against Sizer & Co. for such "salvage," in addition to the contract price which Sizer & Co. was to pay it under the general contract for loading, carrying, and unloading the lumber.

At the trial counsel for Sizer & Co. conceded that there was some "salvage," and on this concession counsel for cross-libelant duly rested, stating that he had witnesses in court on such question. It is assumed that, if such witnesses had been produced, they would have shown earnest and successful efforts in restoring the lumber from the water of the slip to the deck of the lighter.

In fairness to counsel for cross-libelant, they were justified in relying on such concession. I therefore give them the benefit of the fairest result of such testimony apparently available, and which they were justified in not producing. There is no hint, however, of any special contract. The alleged salvage work must be considered in the light of the only contract in existence between the parties, which is as I have above indicated.

■ Counsel for Sizer & Co., in his memorandum submitted, now states that "I did not intend to concede, and my reading of the record does not show, that there was any concession that Chiarello Bros., Inc., is legally entitled to recover anything, at least from Sizer & Co., for recovering this lumber." Under some circumstances, if it was a question of fact, this concession might be sufficient to estop Sizer & Co. from contesting the question further; but, in view of the construction now placed upon his concession by counsel for Sizer & Co., and giving all the effect possible to testimony which could have been produced by the alleged salvors, it seems to me that the question of law is still open and I shall accordingly so consider it. The responsibility of a client under the law cannot be changed in this way by mere statement of counsel.

■ I find that the lumber was knocked off the lighter by an independent cause, to wit, the possible negligence of the passing steamer. I also find that the lighter was properly moored; that therefore this cause was something over which Chiarello Bros. had no control, and for which they are not to be blamed. This does not mean, however, that the contract between Sizer & Co., and Chiarello Bros. may be lost sight of. While this extra work done might, under other circumstances, come under the definition of "salvage" [Castner et al. v. U. S. (C. C. A.) 5 F.(2d) 214], Chiarello Bros. had promised to load, convey, and deliver this lumber at Tisdale Lumber Company dock. It was their duty to do all this. The lumber was in its custody as bailee. Under such circumstances, the voluntary rendition of the service in question is absent.

■ "Three elements are necessary to a valid salvage claim: (1) A marine peril. (2) Service voluntarily rendered, when not required as an existing duty or from a special contract. (3) Success in whole or in part, or that the service rendered contributed to such success." The Sabine, 101 U. S. 384, 25 L. Ed. 982. The duty rested on Chiarello Bros. to use reasonable care to load, convey, and unload all the lumber received by it. It was an unfortunate circumstance that this duty required "fishing" out of the water some of the lumber, into which it had fallen, due to the act of some third party, and placing it again on the deck of the lighter; but this duty, resting on Chiarello Bros., could not be fully performed by pointing to an alleged

negligent steamer and blaming her for a non-performance.

The duty rested on Chiarello. Bros. to gather up this lumber. It was not a purely voluntary act. Chiarello Bros., although put to additional and unexpected expense in performing its contract, and in accordance with its duty, could not charge up such expense against Sizer & Co., which had nothing whatever to do with causing it, in the absence of a special contract. It would have been entirely different if Chiarello Bros. had not agreed to convey the lumber and deliver it; but, having so agreed, apparently without qualification, its claim for additional expense must be against the person causing it. Chiarello Bros. has such claim, although bailee. National Surety Co. v. U. S. (C. C. A.) 129 F. 70, page 73.

Accordingly, in my opinion, under the circumstances here, Chiarello Bros. has no claim for salvage against Sizer & Co. This being so, the cross-libel must be dismissed.

Submit decrees in accordance with this opinion.