## STATE BANK OF WELLSTON, MO., v. MISSISSIPPI VALLEY TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1924.)

No. 6348.

Highways ⬅149—Taxes applied to payment of first series of bonds, and not pro rata to payment of first series and subsequent series.

Under Road Acts Ark. 1919, Act No. 215, § 15, authorizing a road improvement district created under the act to issue bonds, and to pledge and mortgage all assessments for repayment thereof, and section 18, providing that all such bonds "shall be secured by a lien * * * with the rights of priority in uncollected assessments provided for in the pledge or mortgage," and provision of first series of bonds issued thereunder, making the bonds and coupons "secured by a prior lien," the taxes levied to pay for the improvement should be applied to the payment of such first series bonds, and not pro rata to the payment of such bonds and a subsequent series of bonds issued by the district.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Consolidated suits by the Mississippi Valley Trust Company, as trustee, against the Woodruff-Prairie Road Improvement District No. 6 of Woodruff and Prairie Counties in Arkansas, in which the State Bank of Wellston, Mo., intervened. From the decree rendered, intervener appeals. Affirmed.

J. W. House, Jr., of Little Rock, Ark., for appellant.

G. B. Rose, D. H. Cantrell, J. F. Loughborough, and A. W. Dobyns, all of Little Rock, Ark., for appellee.

Before SANBORN, Circuit Judge, and MUNGER, District Judge.

SANBORN, Circuit Judge. This case presents the single question whether the taxes levied on the property of a road district in Arkansas to pay for a road improvement should be applied first to the payment of the first series of bonds issued by that district for $370,500, or pro rata to the payment of that series and a subsequent series of $200,000 issued by that district. The court below decreed that they should be first applied to the payment of the first series of bonds and the interest thereon, and the Bank of Wellston, which is the owner of bonds of the second series, has appealed from that adjudication and assigned it as error. This question was properly raised, argued, submitted to, and decided by the court below upon a petition in intervention presented in a consolidated suit in equity, instituted by the Mississippi Valley Trust Company, as trustee for the bondholders in each of the series, against the road improvement district, to collect the taxes upon the property liable to pay the bonds and apply them to the payment thereof. The answer to the question presented is conditioned by these facts:

The Woodruff-Prairie road improvement district No. 6 of Woodruff and Prairie counties in Arkansas was created under and pursuant to No. 215 of the Acts of the state of Arkansas for the year 1919. Acts Ark. 1919, Volume 1 Road, 686, 706. By that act the board of commissioners and assessors of that district were authorized to ascertain

the benefits to be derived by the property in that district from the road improvements, which the district was organized to make, to make the improvements, and to levy upon the property benefited, and to collect the necessary taxes to pay for the improvements. Section 15 of that Act No. 215 provides that:

"In order to do the work, the board may borrow money at a rate of interest not exceeding six per cent. per annum, may issue negotiable bonds therefor, signed by members of the board, and may pledge and mortgage all assessments for repayment thereof."

Section 18 provides that:

"All bonds issued by the commissioners, under the terms of this act, shall be secured by a lien on all lands, railroads, tramroads, telegraph lines, telephone lines, and pipe lines, in the district with the rights of priority in uncollected assessments provided for in the pledge or mortgage executed by commissioners as security for such bonds."

After the board had made an assessment of taxes upon the property in the district deemed sufficient to pay its bonds to the amount of $370,-500, and the interest thereon, it issued its bonds to that amount, and mortgaged and pledged its property and its uncollected assessments to the Mississippi Valley Trust Company, as trustee, to secure the payment of the principal and interest of those bonds to the holders thereof. The issue of these bonds was authorized by the board by a resolution adopted by it on June 13, 1919. They were dated May 1, 1919. They were coupon bonds and drew 5½ per cent. annually. The date, number, amount, and date of maturity of each of these bonds was set forth in each of them and in the pledge and mortgage. The form of the bonds was recited in the mortgage and it contained, among others, these statements:

"This bond is one of a series of like tenor and effect, except as to denomination and maturity, aggregating three hundred seventy thousand five hundred dollars ($370,500.00) and numbered from one (1) to three hundred seventy-five (375). * * * This bond and the attached interest coupons, as well as all other bonds and coupons forming a part of this issue, are payable out of the proceeds of taxes heretofore legally levied upon the lands and other property subject to taxation, within said district, and benefited by said improvement, and are secured by a prior lien on all of said lands and other property aforesaid."

The following excerpts are taken from the mortgage and pledge:

"For the purpose of further securing the payment of each and all of the aforesaid bonds and the interest coupons thereto attached, as they severally mature, said Woodruff-Prairie road improvement district No. 6 of Woodruff and Prairie counties, Arkansas, doth hereby pledge, assign, transfer, mortgage, and set over to the said Mississippi Valley Trust Company, of the city of St. Louis and state of Missouri, as trustee, the property and revenues of the district, including all uncollected assessments levied by this board, on the lands and other property subject to taxation in said district, together with all assessments that may hereafter be levied thereon."

The mortgage also provides that, when all principal and interest on the bonds have been paid, the district may apply any surplus revenue to other purposes and adds:

"The intention of this pledge being to give the bondholders a first and preferred lien upon all taxes levied and to be levied, and upon the entire

revenues of the district from whatever source derived, and to permit the board of commissioners to appropriate for other lawful purposes only the surplus remaining. * * * "

This mortgage and pledge was duly recorded, so that its record was constructive notice of its contents to subsequent pledgees and mortgagees, and the bonds secured by it were sold to innocent purchasers for value. After all this had been done, and in July, 1920, the board of this district made another levy of taxes upon the property subject to assessment therein sufficient, as they declared in their proceedings, to pay the principal and interest of another series of bonds to the amount of $200,-000 principal and annual interest thereon after September 1, 1920, at the rate of 6 per cent. per annum, caused these bonds to be dated May 1, 1919, issued and sold them, and used the same form of bond and the same form of mortgage and pledge to the Mississippi Valley Trust Company, as trustee to secure this second series of bonds, that they used to secure their prior issue of bonds for $370,500, and then sold the bonds of the second series.

The facts of this case seem at first sight to leave little, if any, doubt of the soundness of the conclusion of the court below. Counsel for the bank, however, argue that its decision is in conflict with the opinion of the Supreme Court of Arkansas in Hoehler v. W. B. Worthen Co., 154 Ark. 444, 243 S. W. 822. But upon an examination of the statute on which that adjudication rests, and a comparison of the facts of the two cases, we find no inconsistency or discord between them. There were two series of bonds issued at different times in that case, as in this case, to secure money to pay for the same improvement. In that case they were issued under a special act of the Legislature of Arkansas, which gave no discretion, authority, or power to the board of commissioners to determine the priority rights of the holders of different series of bonds or of different bonds upon or in the uncollected assessments on the property in the district. On the other hand, that act expressly provided that, "for the payment of both principal and interest of the bonds to be issued under the provisions of this act," the entire revenues from any and all sources, and all real estate subject to taxation for the improvement, were by the act of the Legislature itself pledged, that "all bonds issued under this act shall be secured by a lien on all lands and real property in the district," and that in case of a default in payment of interest or principal, and the appointment of a receiver, the proceeds of the taxes collected by him, after the payment of the overdue interest and the costs, should be applied to the payment pro rata "of all bonds issued by the said board, which are then due and payable." Acts Ark. 1909, p. 1151, §§ 18, 19. The proceeds of the collection of the taxes were clearly required by that act to be applied to the payment of overdue coupons and principal of all the bonds issued for the improvement, share and share alike, without regard to the times of their issue or sale.

Such were not the provisions of the Act No. 215, under which the bonds in the instant case were issued. That act granted the express authority to the commissioners and imposed upon them the duty to determine and fix by their mortgage and pledge the priority of lien and the priority of right in the assessments of each series of bonds it au-

thorized and pledged its property to secure. It provided that all bonds issued under its terms should be secured by a lien, "with the rights of priority in uncollected assessments provided for in the pledge or mortgage executed by commissioners as security for such bonds." The commissioners, in the bonds they issued to secure the $370,500 and in the form of bond recited in their pledge and mortgage, declared that those bonds were secured by a prior lien on all of the lands and other property subject to taxation within their district benefited by the improvements. Upon the faith of that declaration and pledge the holders of those bonds bought them. Subject to the presumptive and legal notice of that declaration and pledge, the State Bank of Wellston, and the other purchasers of the $200,000 of bonds issued by the board more than a year after the first series, purchased them, and there is neither equity nor legal right in their claim to take from the holders of the first series of bonds any part of the lien and security of the pledge and mortgage in reliance upon which they bought their bonds and apply it to their own benefit.

Let the decree below be affirmed.