### KRIETMEYER v. HEMPHILL et al.*

Circuit Court of Appeals, Fifth Circuit.
May 10, 1927.

No. 4952.

1. **Appeal and error ⬅⟹71(5)—Order requiring receiver of drainage district to pay funds to holders of first issued bonds held appealable.**

Order requiring receiver of drainage district to pay holders of coupons of first issued bonds, funds in which holders of bonds subsequently issued claimed right to share, was as to such funds final and appealable.

2. **Appeal and error ⬅⟹837(4)—In drainage district receivership, allegations of unanswered intervening petition by holders of first bonds held not to be treated as facts on appeal by other bondholders (Acts Fla. 1913, c. 6458).**

In proceeding for receivership of drainage district organized under Acts Fla. 1913, c. 6458, in which court ordered payment of interest on bonds with priority to holders of first issue, allegations of intervening petition by holders of first bonds *held* not to be treated as facts on appeal by other bondholders, where record does not show answer to petition, or that decree pro confesso was entered or applied for.

3. **Drains ⬅⟹18—Holders of first bonds of drainage district held not entitled to priority in interest payment from receiver (Acts Fla. 1913, c. 6458, §§ 17, 41, 51, and § 46, as amended by Acts Fla. 1917, c. 7309; Acts Fla. 1923, c. 9129).**

Holders of bonds of first issue of drainage district organized under Acts Fla. 1913, c. 6458, *held* not entitled to priority in payment of interest from funds in hands of receiver, in view of section 46 (as amended by Acts Fla. 1917, c. 7309), and sections 17, 41 and 51, and Acts Fla. 1923, c. 9129.

*Rehearing denied July 18, 1927.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit by Louis H. Krietmeyer against Edward, S. Hemphill, as receiver of the Baldwin Drainage District, and others. From an adverse decree (13 F.[2d] 903), complainant appeals. Reversed and remanded.

See, also, 298 F. 604.

Giles J. Patterson, of Jacksonville, Fla., for appellant.

Giles W. L. Smith, of Brewton, Ala., and John C. Cooper, Jr., and J. Turner Butler, both of Jacksonville, Fla., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The decree appealed from ordered the receiver of the Baldwin drainage district (herein called the district), a public corporation organized under the laws of Florida, out of moneys in his hand derived from taxes assessed upon lands in that district for the payment of interest, to pay first all of the past-due interest coupons in the order of their maturity, with 6 per cent. interest thereon, accruing on the bonds first issued by that District, dated January 1, 1917, if the amount in his hands is sufficient for that purpose, and beginning with the interest coupons first due; that in the event the amount in his hands is sufficient to pay all of the past-due interest coupons on those bonds, with 6 per cent. interest thereon, and there should be a remainder, then in that event, out of the balance of the money remaining in his hands for the payment of interest coupons, said receiver next make payment of the interest coupons past due and unpaid, in the order of their maturity, with 6 per cent. interest thereon, of bonds of said district later issued, dated, respectively, October 1, 1919, and July 1, 1922.

In behalf of the owners of the district's bonds dated, respectively, October 1, 1919, and July 1, 1922, it is contended that the court erred in according priority to interest coupons of bonds dated January 1, 1917. The district was organized in 1916 under a Florida statute which was enacted in 1913. Acts Fla. 1913, c. 6458. That statute provided for the organization and maintenance of drainage districts comprising contiguous bodies of wet and overflowed lands, or lands subject to overflow. Under that act, after a drainage district has been organized, with a governing body called a board of supervis-

ors, after the adoption in a manner prescribed of a plan of reclamation, after the assessment of the benefits and damages accruing to all lands in the district by reason of the execution of the adopted plan of reclamation, and after a prescribed hearing by a designated court, the district must be dissolved if that court finds that the estimated cost of carrying out such plan of reclamation exceeds the estimated benefits to lands included in the district; but, in the event that court finds that the estimated benefits exceed the cost of executing the plan of reclamation, the district is continued in existence. The following is a statement of provisions of that statute having a bearing on the questions presented for consideration:

By section 17 the board of supervisors is required to levy a tax of such portion of assessed benefits on all lands in the district to which benefits have been assessed as may be found necessary by the board to pay the costs of completing the works and improvements called for by the plan of reclamation, and in carrying out the objects of the district, and in addition thereto 10 per cent. of the total amount for emergencies. In case bonds are issued as provided in the act, the amount of the interest (as estimated by said board) which will accrue on such bonds shall be included and added to the said tax. Such taxes are payable in annual installments, each year an annual installment of the total taxes so levied to be due and collected; those taxes, from the date of the assessment thereof until paid, constituting a lien, to which only the lien of the state for general state, county school, and road taxes shall be paramount, on all lands against which such taxes are levied.

Section 41 authorizes the board of supervisors to issue bonds not to exceed 90 per cent. of the total amount of the taxes levied under the provisions of section 17, those bonds to bear interest from date at a rate not to exceed 6 per cent. per annum, with specified maturities, and to be sold "in such quantities and at such dates as the board of supervisors may deem necessary to meet the payments for the works and improvements in the district. * * * A sufficient amount of the drainage tax shall be appropriated by the board of supervisors for the purpose of paying the principal and interest of the said bonds, and the same shall, when collected, be preserved in a separate fund for that purpose and no other. * * * It shall be the duty of said board of supervisors, in making the annual tax levy, as heretofore provided, to take into

account the maturing bonds and interest on all bonds, and to make provision in advance for the payment thereof. In case the proceeds of the original tax levy made under the provisions of section 17 of this act are not sufficient to pay the principal and interest on all bonds issued, then the board of supervisors shall make such additional levy or levies upon benefits assessed as are necessary for this purpose, and under no circumstances shall any tax levies be made that will * * * impair the security of said bonds or the fund available for the payment of the principal and interest of the same."

Section 46 contains the provision that, "if it should be found at any time that the amount of total tax levied under the provisions of section 17 is insufficient to pay cost of works set out in 'the plan of reclamation,' * * * the board of supervisors may make an additional levy to provide funds to complete the work, provided the total of all levies of such tax does not exceed the total amount of benefits assessed."

Section 51 provides that all bonds issued under the provisions of the act shall be secured by a lien on all the lands and other property benefited in the district, and that the board of supervisors shall see to it that a tax is levied annually and collected under the provisions of the act, so long as it may be necessary to pay any bond issued or obligation contracted under its authority.

In 1917 (chapter 7309, Acts Fla. 1917) section 46 of said act of 1913 was amended by adding the following to the above-quoted provision of that section: " * * * And if, in their judgment, it seems best, may issue bonds not to exceed the amount of said additional levy."

Each of the issues of bonds dated, respectively, October 1, 1919, and July 1, 1922, was authorized after the making by the board of supervisors of a finding that the taxes previously levied were insufficient to pay the cost of the work set out in the plan of reclamation, and when each of those issues was authorized the board made an additional levy of taxes in amounts sufficient to pay the principal and interest of the additional bonds issued, the increases in the tax levies for the purpose mentioned being in proportion to the increases in the amount of bonds resulting from the additional issues.

An amendment of the Drainage Act, enacted in 1923 (chapter 9129, Acts Fla. 1923), contained a provision authorizing the appointment of a receiver for a drainage district on the application of any holder of a bond or interest coupon not paid within 60 days after its maturity, and the conferring on such receiver of the power and duty of enforcing collection of drainage taxes assessed against lands in such district. This suit was brought by the appellant in April, 1924, in behalf of himself and other holders of bonds of the several issues above mentioned. The averments of the bill as it was amended showed that the district had not paid the installment of interest due January 1, 1924, and that at the time the bill was filed there was due and unpaid a large amount of delinquent drainage taxes levied upon the lands in said district for the year 1923 and previous years. The decree appealed from was rendered in pursuance of a petition of the receiver appointed by the court for instructions as to the application of funds in his hands available for the payment of interest coupons on the bonds of the district.

[1] As the order appealed from required the receiver to pay to holders of coupons of the first issued bonds funds in which appellant claimed the right to share, that order was, as to those funds, a final one, subject to be appealed from. Texas Co. v. International G. N. Ry. Co. (C. C. A.) 237 F. 921; Stillman v. Hart (C. C. A.) 126 F. 359. The motion to dismiss the appeal is overruled.

[2] Prior to the rendition of the decree appealed from an amended petition of intervention had been filed by holders of the first issued bonds. The record does not show that that petition was answered, or that a decree pro confesso thereon was entered or applied for. There is no merit in the contention made in behalf of the appellees that, in reviewing the decree appealed from, the allegations of that petition should be treated as facts disclosed by the record.

[3] The law under which the bonds of the first series were issued gave notice to those who acquired such bonds that the lands subject to drainage taxes levied to pay the principal and interest of those bonds were also subject, in the event of it being found at any time that the total amount of taxes previously levied was insufficient to pay the cost of the work called for by the plan of reclamation, to additional levies to provide funds required to complete the work, so long as the total of all levies of such taxes or assessments does not exceed the total amount of benefits assessed. Such increases in assessments to provide for the payment for such an improvement are recognized as a legitimate part of the proceeding necessary

to raise the money and to pay bonds to meet the cost of the improvement. Kadow v. Paul et al., as Commissioners, etc. (April 18, 1927) 47 S. Ct. 561, 71 L. Ed. ——.

The statute contains no provision indicating an intention to create a priority as between the beneficiaries of different authorized levies. It specifies the taxes the liens of which are paramount to the lien of those levied to pay the cost of the reclamation work, but does not create in favor of the furnishers of part of the funds used in doing that work a charge against the proceeds of the last-mentioned levies or assessments having priority over the claims of those who did the remainder of that work or furnished the additional funds required to complete it. Though the original act did not expressly authorize the issue of additional bonds following a finding that the tax previously levied was insufficient to pay the cost of the work called for by the plan of reclamation and the making of an additional levy to provide funds to complete the work, section 51 of that act shows that it was contemplated that the annual tax required to be levied was to be such as was necessary to pay any bond issued or obligation created under the authority of the board of supervisors. In the absence of any provision of the act evidencing a purpose to make the amount of principal or interest of bonds first issued a prior charge on the proceeds of annual taxes required to be levied, it well may be inferred that it was contemplated by the lawmakers that those proceeds were to be subject to be applied to the satisfaction of all obligations duly incurred to effect the complete execution of the adopted plan of reclamation.

Evidently the taxes or assessments which had been levied prior to the institution of this suit were intended to provide funds to pay all obligations duly incurred to complete the District's reclamation project. The original act provided for the additional funds required to complete the work, after it was found that the cost of it had been underestimated, being obtained by increasing the assessments on the lands to be benefited, and did not create a prior charge on those lands in favor of those who first furnished funds for doing that work and received bonds for the amounts so furnished. The provision of the statute requiring the appropriation of a sufficient amount of the drainage tax for the purpose of paying the principal and interest of the first issued bonds cannot properly be given the effect of creating in favor of the holders of interest coupons of those bonds a prior charge on the entire proceeds of increased drainage taxes which were levied in amounts sufficient to take care of, not only the interest on those bonds, but additional obligations which had to be incurred to effect the completion of the planned reclamation work. It was not made to appear that the interests of the holders of the first-issued bonds were prejudiced by the whole or a part of the additional funds required to complete the work being obtained by issuing and selling additional bonds, which would not mature until after the assessed lands had been benefited by the completion of the reclamation work, instead of by so increasing the total annual assessments, enforceable while the work was in progress, that the amounts required to complete the work would be obtained by enforcing the lien of those assessments. Whether the additional funds required to complete the work should be obtained in the one way or the other, the charge on the benefited lands of the whole or a part of the additional cost of completing the work was not made subordinate to the charge on those lands in favor of the holders of bonds first issued to obtain funds required for the work; the cost of starting the work not being given a preference over the cost of finishing it.

The just-stated conclusion is supported by the decisions in the cases of Hoehler v. Worthen Co., 154 Ark. 444, 243 S. W. 822, and McNear v. Little Red River Levee District No. 2 (C. C. A.) 293 F. 717. In each of those cases it was decided that several series of bonds, successively issued under Arkansas drainage statutes quite similar to the Florida statute governing this case, to obtain funds for executing reclamation works, created a lien on the benefited lands, without priority, in favor of the holders of all the bonds so issued. The state of facts dealt with in the case of State Bank of Wellston v. Mississippi Valley Trust Co. (C. C. A.) 297 F. 563, distinguishes that case from the instant one. The decision in that case that one of several issues of bonds was secured by a prior lien was a result of the fact that, pursuant to a statute, the bonds accorded priority were given priority when they were issued. As above indicated, no provision of the Florida Drainage Act creates in favor of the district's first issued bonds a prior charge on the proceeds of the taxes or assessments levied on the benefited lands to provide funds to pay the cost of the planned reclamation work. The act as a whole indicates that it was intended by the lawmakers that those proceeds should be applied to the payment of the total cost of

such work, without discrimination between the beneficiaries of the taxes or assessments levied.

The record indicates that, when the receiver sought instructions from the court as to the application of funds in his hands which were available for the payment of interest coupons, those funds were not sufficient to pay all outstanding past due coupons; but the record does not show that the yield from the drainage taxes already assessed against the benefited lands will, when the liens of those taxes shall have been duly enforced, be insufficient to pay all costs of the planned reclamation work, the total of such costs being greatly less than the amount of the ascertained benefits accruing to the lands assessed from the completed reclamation work.

We conclude that the court erred in deciding that the past-due coupons of the first issued bonds of the district were entitled to priority of payment, and that the funds in the receiver's hands which are available to pay interest coupons should be applied ratably to the payment of past-due coupons of all the bonds issued.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.