**WAKEM & McLAUGHLIN, Inc., et al. v. CULVER.**

Circuit Court of Appeals, Sixth Circuit. November 7, 1928.

No. 5017.

William R. Pomerene, of Columbus, Ohio, and Louis L. Dent, of Chicago, Ill. (Pomerene & Pomerene, of Coshocton, Ohio, and Booth, Keating, Pomerene & Boulger, of Columbus, Ohio, on the brief), for plaintiffs in error.

Benson G. Watson and Oliver E. Davis, both of Columbus, Ohio (Watson, Davis & Joseph, of Columbus, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Culver, the plaintiff below, recovered damages for breach of a contract to manufacture gloves. The defendants had agreed in the contract to furnish plaintiff the cutting dies, materials, and supplies needed for the production of the gloves, to ship the materials to points designated by plaintiff, and to pay promptly at the rate of 30 cents a dozen upon receipt of invoices for all gloves made, "invoices received in any one week not to exceed any amount in excess of five thousand dozen pairs of gloves." Plaintiff was an experienced manufacturer of gloves, and the owner of three factories, with a combined capacity of 4,500 dozen pairs of gloves a week. He agreed to use his knowledge and equipment to produce gloves for the defendants, to ship them according to instructions, and "to build.

up his manufacturing organization to a capacity of five thousand dozen per week with the least possible delay."

It was further agreed that, should the defendants desire in excess of 5,000 dozen pairs a week, they would notify plaintiff of their increased needs, and allow him to increase his production to take care of "such additional amounts as may be desired"; but, if he could not "manufacture anywhere near the quantities of gloves sufficient to take care of" their requirements, he agreed to give timely notice of his inability so to do, so that they could make other arrangement for "the excess production required."

The court below construed this contract as obligating defendants to furnish plaintiff the materials for the manufacture and production of 5,000 dozen pairs of gloves a week from the time the plaintiff could have increased his capacity to that extent to the end of the contractual period of two years. The defendants contended then, as they contend here, that they did not agree to furnish the materials for any specific quantity, and, not being bound to do so, the court should have directed a verdict in their behalf.

█ It is not unusual for a producer to undertake to furnish a jobber or other purchaser with all of a certain article that he shall require in his business or with all that he shall require up to a stipulated quantity. Such contracts, while not definite as to quantity, are capable of being made definite, and are enforceable. Loudenback Fertilizer Co. v. Tennessee Phosphate Co. (6 C. C. A.) 121 F. 298, 61 L. R. A. 402; Mills-Morris Co. v. Spark Plug Co. (6 C. C. A.) 7 F.(2d) 38. The present contract, however, is not such a contract, since it contained no reference to the needs or requirements of defendants save as to a possible excess quantity. Besides, it is admitted in argument that defendants had the right to have gloves made elsewhere; and it appears in the proofs that they had no established glove business. Accordingly, the contract is either one for 5,000 dozen pairs of gloves a week, as plaintiff contends, or, as defendants contend, is one in which neither party agreed to any specific quantity, or, at best, in which plaintiff agreed to manufacture such gloves as defendants might require up to 5,000 dozen pairs a week. Contracts of this latter kind, conditioned upon the will, wish, or want of one or both of the parties, are uniformly held to be unenforceable,[1] except

as there may be a valid option enforceable by the optionee.[2]

It is true that, where a contract recites that one of the parties has sold to the other a certain quantity, as in Butler v. Thomson et al., 92 U. S. 412, 23 L. Ed. 684, or has agreed to furnish a quantity ranging from a stated minimum to a stated maximum, as in Feuchtwanger v. Manitowoc Co. (C. C. A.) 187 F. 713, there is necessarily implied an obligation to buy or receive the stated quantity in the one case and the maximum or minimum quantity in the other. In such cases the definite and express undertaking to which the other party has assented, and which cannot be carried out without his co-operation, makes a binding contract. We fail to find any such undertaking on the part of either of these parties.

█ The contract in question was prepared by Culver. It contains no express promise, running from one party to the other, as to the quantity to be produced. If, therefore, there was an obligation to furnish materials for or to accept any specific quantity, it must be implied from the three references which the contract makes to 5,000 dozen pairs. The first of these references deals with invoices to be accepted and paid for. If it dealt with production, and was not necessarily descriptive of the desired limitation of payments, there would be room for arguing that it implied an obligation with respect to furnishing materials; but neither in its terms nor by implication does it obligate plaintiff to produce any quantity, and it is to be treated, we think, not as relating to production, but as providing a method of payment, whatever the weekly production was—whether less or, under the later optional provision, more than the quantity mentioned. The second reference contains an agreement on the part of plaintiff to increase his producing capacity to 5,000 dozen pairs a week; but here again there is no express or implied promise to produce any quantity nor any undertaking to which defendants' assent or co-operation was necessary. The third reference relating to the possible wants of defendants in excess of 5,000 dozen pairs a week contains no promise to produce that quantity,

---

[1] American Cotton Oil Co. v. Kirk et al (C. C. A.) 68 F. 791; Crane et al. v. C. Crane & Co. (C. C. A.) 105 F. 869; Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co. (C. C. A.) 114 F. 77,

57 L. R. A. 696; Dennis et al. v. Slyfield et al. (C. C. A.) 117 F. 474; A. Santaella & Co. v. Lange Co. et al. (C. C. A.) 155 F. 719; Oakland Motor Car Co. v. Indiana Automobile Co. (C. C. A.) 201 F. 499; Leach v. Kentucky Block Cannel Coal Co. (D. C.) 256 F. 686; Midland Steel Sales Co. v. Waterloo Gasoline Engine Co. (C. C. A.) 9 F.(2d) 250; Dorsey v. Packwood, 12 How. (53 U. S.) 126, 13 L. Ed. 921; Willard, Sutherland & Co. v. United States, 262 U. S. 489, 43 S. Ct. 592, 67 L. Ed. 1086.

[2] Hunt v. Stimson (6 C. C. A.) 23 F.(2d) 447.

but seems to assume that it would be done. That assumption, as we have seen, has no obligatory basis in the contract; and, while it is to some extent interpretative of the two preceding references, it quite logically carries the inference that, although defendants had not agreed to have any definite quantity manufactured, it was thought that they would want as many as 5,000 dozen pairs a week, or at least that many some weeks, and plaintiff was willing to agree to manufacture that quantity, if and whenever defendants wanted it, and to manufacture more if they desired it and he was able to do so—quite as logically, it seems to us, as that the quantity specified was the minimum weekly quantity that had been or was agreed upon. If this is the correct inference, as we think it is, there was of course no obligation on the part of the defendants. To hold otherwise would be to infer such an obligation from implications against plaintiff—implications arising from undertakings that plaintiff could have performed without defendants' assent or co-operation. This we cannot do. The motion for a directed verdict should have been sustained.

Judgment reversed.