KREITMEYER v. BALDWIN DRAINAGE DIST. (FLORIDA NAT. BANK OF JACKSONVILLE, Intervener).

No. 309.

District Court, S. D. Florida, Jacksonville Division.

Dec. 30, 1932.

George M. Powell, of Jacksonville, Fla., for petitioner.

J. Turner Butler, of Jacksonville, Fla., for receiver.

STRUM, District Judge.

By its petition of intervention filed herein March 24, 1930, a little more than a year after the decision of the Circuit Court of Appeals in Hemphill v. Florida National Bank, 30 F.(2d) 892, Florida National Bank now seeks to recover from the receiver, as a claim prior to the claims of bondholders and other creditors, a balance in the sum of $5,450, with interest, upon the obligation of the district to the bank originally in the sum of $13,750, evidenced by a warrant drawn by the district upon its treasurer payable to United States Trust Company and indorsed to the Florida bank, being the same instrument involved in the cause above cited, and which was there held to evidence a loan from the Florida bank to the district.

This balance remains after applying upon the district's original obligation to the bank the sum of $8,300, which was on deposit with the bank to the credit of the district when the receiver for the district was appointed, which action was approved by the Court of Appeals in the decision aforesaid.

When Hemphill, the receiver, originally sued the bank on June 27, 1924 (Hemphill v. Florida Nat. Bank, supra), attacking the validity of the bank's action in applying said sum of $8,300 in reduction of the district's obligation to the bank, the bank in due course filed an answer asserting a superior lien upon this sum of $8,300, and the right to apply the same pro tanto in reduction of the district's obligation to the bank. The answer was silent as to the balance now in question which remained after this credit was applied. No counterclaim was therein asserted for this balance of $5,450, although the balance existed when the bank's answer in the former suit was filed, and arose from the same obligation relied on in that suit by the bank, and although the same evidence which established the bank's right to the funds on deposit would have established also the existence of the balance now sought to be recovered, had such balance been asserted in the former suit as a counterclaim.

The former suit (Hemphill v. Florida National Bank) begun June 27, 1924, was terminated by decision of the Court of Appeals, February 26, 1929 (30 F.(2d) 892). Until the present suit was filed on March 24, 1930, the bank asserted no rights against either the receiver or the district with respect to this balance, other than might be found in a casual conversation between the bank's attorney and the receiver's attorney, following the decision of the Court of Appeals above referred to, in which conversation these attorneys informally discussed the question of whether the receiver would pay this balance on authority of the decision mentioned, which the receiver's attorney some time later informed the bank's attorney would not be done. This conversation cannot be construed as a demand, and if it was such it did not occur until some time subsequent to February 26, 1929.

Meanwhile, between his appointment in April, 1924, and the institution of this suit in March, 1930, the receiver has collected some $93,270 in taxes of the district, less than enough to meet bond maturities. This sum represents collections of taxes levied from approximately 1916 to 1930, inclusive. Of this, $38,681.67 was derived from the levy of 1923 and previous years. By authority of orders duly entered in the principal receivership cause, to which this suit is ancillary, the receiver disbursed to bondholders the sum of $79,269.45 on December 15, 1927, and $10,089.18 on February 4, 1930. The receiver has on hand a residue of $3,884.89, which is the balance remaining of the taxes collected throughout the years aforesaid after making said disbursements.

The disbursements above mentioned were made during and subsequent to the pendency of the receiver's suit against the bank [Hemphill v. Florida National Bank (C. C. A.) 30 F.(2d) 892], in which suit the bank's superior lien upon the moneys on deposit was asserted, and while the bank stood quiescent as to the balance now contended for by it. The bank replies to this, that it had no notice of the receiver's application for the or-

ders authorizing such disbursements, and therefore is not chargeable with the consequences thereof. Without checking the record, this statement is accepted as true as regards any conventional notice of hearing served upon the bank.

Even so, when the testimony was being taken in the suit of Hemphill, Receiver, v. Florida Nat. Bank (C. C. A.) 30 F.(2d) 892, there was then pending the ancillary cause of Krietmeyer v. Hemphill (C. C. A.) 19 F.(2d) 513, a suit to determine the priorities between the holders of several series of bonds issued by the district. In the testimony in Hemphill, Receiver, v. Florida Nat. Bank, in which the bank's superior lien upon the moneys on deposit was asserted, the receiver (Hemphill) testified that he then had on hand $85,000; that there was then due bondholders $157,000; and that no disbursement thereof would be made until the question of priorities between the bondholders, then in litigation sub nom. Krietmeyer v. Hemphill, had been settled. Thus the bank acquired knowledge on January 6, 1927, the date the testimony was given, that more money was due bondholders than the receiver had on hand, and that disbursement awaited the settlement by the Court of Appeals of priorities amongst bondholders. This was tantamount to notice to the bank of intended disbursement of these funds as soon as the stated question was settled. This question was settled May 10, 1927. Krietmeyer v. Hemphill (C. C. A.) 19 F.(2d) 513.

By virtue of an order made in the principal cause on December 15, 1927, the receiver disbursed $79,296.45, and by like authority entered on February 4, 1930, he disbursed $10,089.18. There remained on hand from, at least, January, 1927, to February, 1930, more than enough to pay the balance to the bank, had it during that time asserted and established its right thereto as a priority; yet the bank took no action with respect to the balance now sought until March, 1930, although in the meanwhile, and beginning in 1924, it had actively litigated the question of its right to a superior lien upon the deposit and its rights to apply these funds on the district's obligation to it, which question was decided February 26, 1929. Hemphill v. Florida Nat. Bank (C. C. A.) 30 F.(2d) 892.

■ This is a situation peculiarly within the purview of Equity Rule No. 30, which provides, inter alia: "The answer must state in short and simple form any counter claim arising out of the transaction which is the subject matter of the suit." The transaction which was the subject-matter of the suit of Hemphill v. Florida National Bank (C. C. A.) 30 F.(2d) 892, was the bank's act in applying against the district's obligation to the bank the moneys held by the bank on deposit to the credit of the district, upon which moneys the bank asserted a lien superior to the claims of bondholders. The stated application of the moneys by the bank necessarily left the bank with a balance due it by the district in the sum of $5,450, the sum here sought, which could and should have been asserted by the bank as a counterclaim in the former suit; yet the bank, while asserting a superior lien upon the moneys it held on deposit, and while asserting a right to apply those moneys as a credit pro tanto upon the district's obligation to the bank, made no move whatever in that cause to assert a counterclaim for the balance now sought, nor any other attempt to do so, until the institution of this separate ancillary suit six years later, in March, 1930.

Thus the bank has waived or abandoned any right, as against the receiver, to now assert a superior lien upon, or priority of payment out of, the funds now or heretofore in the receiver's hands. Caflisch v. Humble (C. C. A.) 251 F. 1; Portland Wood Pipe Co. v. Slick Bros. Const. Co. (D. C.) 222 F. 528, 530.

To this the bank replies that its counterclaim was of a purely legal nature, and therefore not within the equity jurisdiction of the court in the former suit, so that it could not have been therein asserted. American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. But the basis of the counterclaim is no more legal in nature than the claim to the moneys on deposit which was successfully interposed in the former suit. Both spring from the same obligation. The bank must rely in each instance upon the same equitable principles to establish its asserted priority. If the bank's just stated contention is sound, it would be fatal to this ancillary suit, which is in a court of equity. If equity may retain the present suit, it could have retained an answer by the bank setting up the same matter as a counterclaim in the former suit.

■ The answer to this proposition is found, however, in the principle that where an insolvent corporation is placed in the hands of a receiver, such appointment draws to the jurisdiction of the court appointing the receiver the control of the corporation's assets so far as distribution thereof is con-

cerned, and parties must ordinarily go into that court to assert their rights. White v. Ewing, 159 U. S. 36, 15 S. Ct. 1018, 40 L. Ed. 67. So this court of equity which appointed the receiver was an appropriate, if not the only, forum in which the bank's counterclaim could have been asserted, especially since the relief sought depends wholly upon equitable principles. Moreover, in Hollander v. Heaslip (C. C. A.) 222 F. 808, it was said: "A court of equity administering the estate of an insolvent corporation through its receiver, has jurisdiction, on an ancillary bill filed by the receiver, to hear and determine a claim on behalf of the corporation against a third person, when it can obtain jurisdiction over his person, although the claim is of a purely legal nature." And in McMillan v. Anderson (D. C.) 282 F. 675, 677, it is said: "A court of equity is not deprived of jurisdiction simply because a purely legal question becomes collaterally involved."

 Again, the bank's long-continued acquiescence in the receiver's acts bars it from the relief now sought. The bank knew in January, 1927, that the receiver would make disbursements as soon as the question of priorities amongst bondholders was settled, which question was decided May 10, 1927. The receiver made no disbursements until December 15, 1927, seven months thereafter. There still remained enough to satisfy the bank's demand until the second disbursement was made on February 4, 1930, two years and eight months after the settlement of the question of priorities. The bank had not yet asserted a superior right to any of the tax moneys in the receiver's hands, but waited more than a month after the second disbursement to do so. If this was not laches, it was such acquiescence as raises a presumption of consent. If a party having a right stands by and sees another dealing with the property inconsistently with the right, and makes no objection when the act is in progress, he cannot afterwards complain. Hall v. Otterson, 52 N. J. Eq. 522, 28 A. 907, 912; Board of Com'rs of Cass County v. Plotner, 149 Ind. 116, 48 N. E. 635; Lowndes v. Wicks, 69 Conn. 15, 36 A. 1072; 2 Pomeroy's Eq. Juris. (3d Ed.) § 965.

The decision in Hemphill v. Florida Nat. Bank (C. C. A.) 30 F.(2d) 892, is not necessarily determinative of the bank's rights in this suit. In the former suit involving the moneys on deposit in the bank which were applied on the district's obligation, the Court of Appeals was dealing with moneys on deposit in the bank in April, 1924, the proceeds of tax collections of 1923 and prior years, upon which moneys the bank was held entitled, under the Florida statute, to a claim superior to bondholders. But that case does not hold, as the bank now contends, that the bank would be entitled to a superior lien upon all tax moneys coming into the hands of the receiver, including the taxes for the years subsequent to 1923, for the balance due the bank on account of its loan to the district to pay bonds maturing in the year 1923.

An additional obstacle to the bank is that the taxes collected by the receiver have all been commingled in one fund, from which the stated disbursements have been made, leaving a general residue of $3,884.89. It is impossible to now ascertain with accuracy what part of that residue is referable to tax collection of 1923 and previous years. Had the bank asserted a counterclaim in 1924 when it filed its answer in the former suit, the sums collected for 1923 and prior years, which alone were subject to the bank's claim, could have been kept segregated.

The intervening petition of the bank will be dismissed, without prejudice to its rights, if any, to enforce its claim as a common creditor against the district itself.