**FLORIDA NAT. BANK OF JACKSONVILLE
v. HEMPHILL et al.**

No. 6928.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1934.

George M. Powell, of Jacksonville, Fla., for appellant.

J. Turner Butler and Giles J. Patterson, both of Jacksonville, Fla., and G. W. L. Smith, of Brewton, Ala., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The Baldwin drainage district, organized in 1916 under the laws of the state of Florida, issued three series of bonds, January 1, 1917, October 1, 1919, and July 1, 1922. The affairs of the district did not prosper. Tax collections were slow and difficult, and the supervisors were often compelled to borrow to pay the maturing coupons. On June 23, 1923, not having sufficient funds on hand to pay maturing coupons, the district arranged with the Florida National Bank, depository for the district drainage taxes, for an advance for that purpose of $13,750. On April 10, 1924, Krietmeyer, a bondholder, on behalf of himself and others similarly situated, filed a bill for the appointment of a receiver, setting up the delinquent condition of the district, that the supervisors were neglecting their duty in collecting taxes, and that it was necessary that some one be appointed to collect, hold, and disburse them in the interest of the bondholders. Krietmeyer v. Baldwin Drainage District (D. C.) 298 F. 604. On April 28 Hemphill was appointed receiver.

On April 23, 1924, the district had on deposit with the Florida National Bank $8,300. On that day the bank, by way of offset, applied $7,500, and on April 28, $800 of the deposit against the district's indebtedness to it. On June 27, 1924, Hemphill sued the bank to annul the offset and recover the $8,300 as tax collections due the bondholders. The suit failed; the bank's right to offset was on February 20, 1929, fully sustained. Hemphill v. Florida National Bank (C. C. A.) 30 F.(2d) 892. On the trial of the suit in January, 1927, the receiver testified:

"All coupons maturing on bonds of the District subsequent to July 1, 1923 have become due and payable. I have some eighty odd thousand dollars in my possession. Only about two years could be paid out of that, after which there would not be a very large amount left, from a comparative standpoint, because there are certain expenses connected with the receivership and the semi-annual coupons, and in addition to that $40,000 of the principal amount of the bonds matured on January 1, 1927.

"None of the money that I have on hand has been applied to the payment of any of the past due interest and principal because of the contest now on between the bondholders over priority. Pending the final decision of that case no disbursement is being made to the bondholders."

This right of priority asserted by a claim filed May 27, 1926, was disposed of adversely

to the claim, with directions to apply the funds in the receiver's hand ratably to the payment of past-due coupons on all the bond issues. Krietmeyer v. Hemphill (C. C. A.) 19 F.(2d) 513.

On December 14, 1927, and on February 4, 1930, the District Court entered its orders authorizing Hemphill, as receiver, to disburse the amounts in his hands on the principal and interest of the bonds of the district. Under these orders the receiver disbursed to the bondholders on December 15, 1927, $79,269.45 and on February 4, 1930, $10,089.18. In addition to these payments $689.54 has been paid out on interest coupons since February 4, 1930.

On March 24, 1930, the bank filed its intervention in the receivership proceedings, to charge the small balance in the receiver's hands, now $3,844.89, with the payment of the balance of $5,450 principal, with interest from April 28, 1924, remaining due on the bank's claim against the district after the application of the offsets to it. It claimed that under the statute, section 1460, Florida Compiled General Laws of 1927, the statute it relied on to sustain its offset claims, in Hemphill v. Florida Nat. Bank, supra, it has a lien on all collections for 1923 and prior years; that the balance in the receiver's hands is made up of these collections; but, if not, that, those collections to which it is entitled having been paid to the bondholders, it is subrogated to their claims against these.

The receiver resisted the claim as barred by limitation, by laches, and by delay in waiting to assert it until the funds in the receiver's hands, out of which must be paid the routine expenses of the receivership and the cost of administration, has dwindled to their present small sum. He particularly insisted that by failing to assert a lien by counterclaim in the suit the receiver brought while the receiver still had funds in his hands, the bank has waived and abandoned its preference claim.

Finally, he defended on the ground that the funds in his hands have not been identified with, they are not, any funds the bank could lay claim to.

The District Judge, assuming though questioning the correctness of the assumption, that, if the suit had been timely brought and the bank could identify funds in the receiver's hands as installments of taxes collected under levies for the years 1923 and prior, its right to payment out of them would be prior and superior to the rights of the bondholders, agreed with the receiver that there was no merit in the bank's claim. He thought that, the great laches of the bank in waiting six years to sue, until the receiver had disbursed to the bondholders under orders of the court all of the money in his hands except a small balance applicable to expenses, the practical impossibility now of determining to what year's collections the sum in the receiver's hands was referable, and its failure to counterclaim against the receiver's funds in the suit the receiver had brought to obtain the set-off money, operated to prevent the bank's now claiming them. Finally, he thought that, assuming all else in favor of the bank's claim, it must fail for want of proof identifying the funds.

We do not understand it to be contended that, laches, time, and circumstances aside, the mere failure to press a counterclaim in a suit brought on a specific demand when the defense relied upon is adequate to defeat the claim, cuts off the right to later press an affirmative demand. We understand it to be contended that the laches of the bank in not asserting its claim until after all the moneys except the small amount for administrative uses has been disbursed under court orders, prevents its doing so now, and we agree with this contention. Laches aside, however, we think it perfectly clear that the bank cannot maintain its claim, (1) because it cannot identify the funds as any part of the year's collections it claims a lien on, and (2) because it never had any better right to the tax collections for a particular year than the bondholders had. It is in proof that, of all the sums the receiver collected and paid out, only $38,681.67 was collected from the levies in the years the bank lays claim to, 1923 and prior. For the payment of their bonds and interest, the bondholders look to the collection for these years in the same way that they look to the collections of other years. It is in proof that long before this suit was filed more than twice that amount was paid out to the bondholders under a court order.

When in the case of Hemphill v. Florida National Bank, supra, the court sustained the set-off, it was not on the ground that the statute referred to there gave the bank a lien on collections superior to that of the bondholders. It was because the district, the owner of the funds, had a right to pay them to the bank in liquidation of the debt, and, the bank having applied them by way of set-off, the bondholders had no equitable right in them superior to that the bank had. The shoe is on the other foot now. The receiver, as he not only had a right, but was ordered to do, paid

these moneys out to the bondholders. The rights of the bank in the sums he paid out, if equal to that of the bondholders, were certainly not superior to them, and neither the bondholders nor the receiver can be held to account because of these payments.

Nor can these payments give rise to a claim by the bank on other funds. Standing as it must then, entirely upon its right to recover these funds as the identical installments of taxes out of which the bank's claim is by the statute made payable, the suit fails, for it is perfectly clear that no such showing is made.

The judgment is affirmed.