## EASTERN TRANSP. CO. v. BLUE RIDGE COAL CORPORATION.

No. 152, Docket 20440.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1947.

Foley & Martin, of New York City, (Chistopher E. Heckman and Louis J. Lawrence, of counsel), for appellant.

Mahar & Mason, of New York City, (Frank C. Mason, of counsel), for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

By cross libel Eastern Transportation Company sought the recovery of freight payable by Blue Ridge Coal Corporation for the transportation of two cargoes of coal from Hampton Roads to New York.[1]

---

[1] The original libel, brought by Blue Ridge for the total loss of a barge load of coal, is not involved on this appeal.

Blue Ridge counterclaimed for damages caused by Eastern's breach of contract to furnish barges for other cargoes. The freight claim being conceded, the trial concerned itself only with the counterclaim. The district judge held that Eastern had broken its contract to furnish barges and allowed as damages the difference between the agreed water freight and the actual freight paid by Blue Ridge for two shipments sent by rail from Hampton Roads to New York. This resulted in a small net decree in favor of Eastern.

██ Upon appeal Eastern now for the first time urges that its contract was void and unenforceable. The agreement was in writing dated April 1, 1941, and signed by the parties by their vice-presidents. It purported, "in consideration of the mutual covenants hereinafter contained," to bind Eastern to "furnish * * * such barges as the Charterer [Blue Ridge] may require up to a maximum" specified for each month, and to bind Blue Ridge to "ship on the barges furnished as aforesaid, shipments of coal in cargo lots * * *" On its face, the appellant argues, the contract was illusory, because Blue Ridge promised only to ship on such barges as it "may require" and did not promise to "require" any. Indeed, the proof showed that Blue Ridge made an apparently similar contract with another carrier, The P. Dougherty Company, and during several months shipped all its cargoes by Dougherty boats. If "may require" means only "may request," the promise of Blue Ridge was illusory; a promise whose performance depends upon the mere will or inclination of the promisor imposes no obligation upon him and is insufficient consideration to support the promise of the other party to the supposed contract. A.L.I. Contracts, § 79b; North German Lloyd v. Mexican Petroleum Corp., 5 Cir., 24 F.2d 46; Wakem & McLaughlin v. Culver, 6 Cir., 28 F.2d 942. However, it is possible that the understanding of the parties was that Blue Ridge would employ either Eastern or Dougherty for whatever coal it had for shipment to New York. So construed, the contract would be valid. Such a promise by the shipper would be a good consideration for the carrier's promise because the carrier named in the second contract might not have enough barges to meet the shipper's requirements and, in that event, the shipper bound himself to use the boats of the carrier named in the first contract.

██ But whatever the original understanding, it is clear from the conduct of the parties that before the end of the year 1941 they had come to a definite agreement which bound both. Barges were to be furnished not at the whim or request of Blue Ridge but according to monthly programs set up by Harris (the Boston broker) after consultation with Randolph of Carter Coal Company, from whom Wolf of Blue Ridge bought its coal. Hooper of Eastern had told Wolf in the meeting at which the contract was negotiated, that "our office" doesn't "take care of any detail of the movement of the vessels," Harris "handles a program." Randolph testified that from October 1941 to March 1942 he was in almost daily communication with Harris. They arranged month by month what barges (both Eastern's and Dougherty's) would be furnished and what cargoes Carter Coal Company would deliver to Blue Ridge for shipment from Hampton Roads to New York. And it appears that Wolf knew that the monthly programs for shipment were being thus arranged (see e.g., exhibits F., G., L., R.). Hence he was bound by them as much as were Randolph and Harris and, through Harris, Eastern. The monthly programs constituted acceptances of Eastern's continuing offer to furnish such barges as Blue Ridge "may require." Accordingly, after the January and February agreements between Randolph and Harris, Blue Ridge was bound to use the barges scheduled for February and March and Eastern was bound to furnish them. In both months Eastern failed to complete its performance.

Judgment affirmed.