GRACE LINE, Inc., Libelant-Appellee,

v.

UNITED STATES of America, Respondent-Appellant.

No. 5, Docket 24416.

United States Court of Appeals Second Circuit.

Argued Nov. 6, 1957.

Decided May 6, 1958.

Kirlin, Campbell & Keating, New York City (Walter P. Hickey, L. DeGrove Potter and Clement C. Rinehart, New York City, of counsel), for libelant-appellee.

George Cochran Doub, Asst. Atty. Gen., Paul W. Williams, U. S. Atty., S. D. New York, New York City, Paul A. Sweeney, Washington, D. C., Benjamin H. Berman, New York City, and Herman Marcuse, Washington, D. C., Attorneys, Dept. of Justice (Leavenworth Colby, Chief Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., of counsel), for respondent-appellant.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

In form the decree in admiralty from which the government appeals was entered *pro confesso* on motion of the libelant Grace Line, Inc., based upon exceptions and exceptive allegations addressed to the sufficiency of the answer, which asserted payment of the claim sued upon.

It is alleged in the libel that between December 31, 1954 and February 16, 1955 Grace carried six shipments of ore for the United States for which freight charges in the amount of $10,732.22 became due and payable. The validity of this freight claim is not disputed. But the United States paid only $2,490.-75, and the remaining $8,241.47, for which the judgment *pro confesso* was entered, was withheld and applied by the Comptroller General against the freight bill because of damages alleged to have been suffered by the United States in a wholly unrelated series of transactions, during the period from December 14, 1952 to April 6, 1953, in connection with which it is claimed that some of the goods transported by Grace were delivered in a damaged condition and some were lost.

The bills of lading under which the 1952–1953 shipments were made provided that "the Carrier shall be discharged from all liability in respect of * * * every claim whatsoever with respect to the goods unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered * * *." The bills also incorporated by reference the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1301 et seq., which includes a similar one year time bar. No judicial proceedings were instituted by the United States against Grace for the loss of, or damage to, the 1952–1953 shipments within the one year period.

Grace's libel in the court below claimed that freight was due under the 1954–

1955 shipments, but made no mention of Grace's earlier transactions with the United States. The government's answer alleged, by way of set-off or defense, that Grace was indebted to the United States in an amount greater than that claimed in the libel because of its mishandling of the earlier shipments. Grace's exceptions to the sufficiency of this answer were sustained on the grounds: (1) that the government's claim based on the 1952–1953 shipments arose from a transaction unrelated to the libel and thus could not be made the subject of a set-off in an admiralty proceeding; and also (2) that this earlier claim was time-barred.

On this appeal the government urges several grounds for reversal. Its first contention is that the Comptroller General's withholding and applying of funds due a creditor because of the creditor's alleged indebtedness to the United States results in the discharge of "mutual debts" and thus constitutes "payment"; and that an admiralty court must always consider payment as a defense to a libel. The government bases this argument on the provision in 31 U.S.C.A. § 71 that all claims by or against the United States "shall be settled and adjusted in the General Accounting Office," which it asserts is part of a "comprehensive statutory plan" made up of this and several other statutes, located in different parts of the United States Code Annotated,[1] authorizing the withholding of money by the Comptroller General whenever a creditor of the United States is also allegedly indebted to the United States.

▪ The specific issue on this first phase of the case is: what did the Congress mean by 31 U.S.C.A. § 71, which provides: "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office." The question is one of statutory interpretation. We think it merely pricks the surface of the problem to dispose of the case by saying that it is absurd to suppose that the statute was intended to provide the government with a means of keeping stale claims alive indefinitely with respect to those having more or less continuous business relations with the United States.

The semantics of the government approach here is in terms of the defense of "payment." But the underlying thesis must be that the Congress intended to by-pass the process of adjudication and provided in lieu thereof a unilateral decision by the Comptroller General. We can find nothing in the statute to warrant any such inference. It is not provided that the withholding shall constitute payment or a discharge of the debt, nor does the general context, nor any word or phrase therein, indicate that the normal processes of adjudication are to be overridden. Indeed, there is no dispute about the right of the government to proceed, as it often does, to reduce its claim to judgment if it can. Moreover, in the view of the Comptroller General,[2] and under the cases,[3] the withholding by the Comptroller General is subject to judicial review; and no legislative history has been brought to our attention which supports the contention that administrative action by the Comptroller General in withholding money

---

1. 5 U.S.C.A. § 46d; 5 U.S.C.A. § 82; 31 U.S.C.A. § 227; 49 U.S.C.A. § 66.

2. Letter of the Comptroller General of the United States, 1954 U.S.Code Congressional and Administrative News, pp. 2553, 2554.

3. E. g., United States v. Munsey Trust Co., 332 U.S. 234, 240, 67 S.Ct. 1599, 91 L.Ed. 2022. In Munsey, where the Supreme Court said that "(t)he government

has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due him,'" 332 U.S. at page 239, 67 S.Ct. at page 1602, it was considering the situation where the creditor's debt to the United States was not disputed, and it clearly recognized that such was the fact in the case then before it. 332 U.S. at pages 237, 240, 67 S.Ct. at pages 1600, 1602.

due to a creditor of the United States makes it unnecessary for the government to prove its claim on the merits, subject to such defenses as may exist in law or in fact, if it is to be applied against a claim of the creditor in settlement thereof. In other words, the attempted set-off must be a legally enforceable claim; and the fact that the Comptroller General has decided the claim in favor of the government *ex parte* by withholding the amount thereof from a payment justly due to a creditor of the United States neither constitutes a payment of and discharge of the debt nor does it stop the running of the applicable Statute of Limitations against the government claim in alleged satisfaction of which the Comptroller General takes this unilateral action. Here the period of limitations had plainly run.[4]

The statutory scheme, such as it is, constitutes no more than a method for co-ordinating the claims and debts of the various government departments and agencies.

The government cites Section 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66, and its application in United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126, recently decided by the Supreme Court, as part of the "comprehensive statutory plan" which, it argues, shows that Congress intended that unilateral withholding and applying by the Comptroller General was to constitute payment of a creditor's claim. Consideration of the Western Pacific case and 49 U.S.C.A. § 66 as applied therein, however, lends further support to our view, as expressed above, of the extent and effect of the Comptroller General's power to withhold and apply. In that case three railroads had carried shipments of bomb casings filled with napalm gel, which is inflammable but not self-igniting, for the United States. The railroads billed the United States at the highest, first-class, rates for "incendiary bombs" and the gov-

ernment paid the bills of two of the railroads as presented. On post-audit, however, the General Accounting Office made deductions from subsequent bills of these two railroads on the ground that the shipments of napalm gel should have been carried at the lower, fifth-class, rate. The General Accounting Office had acted pursuant to 49 U.S.C.A. § 66 which provides: "Payment for transportation of * * * property for or on behalf of the United States by any common carrier subject to the Interstate Commerce Act * * * shall be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office, but the right is reserved to the United States Government to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due such carrier." The railroads sued in the Court of Claims to recover the sums withheld from their subsequent bills and the government's defense rested on three contentions which went to the merits of the carriers' claim for payment of their subsequent bills. There was no contention that those bills had been "paid" by the withholding.

The statute on which the government relied in Western Pacific expressly reserved the right to the United States to deduct any overpayment from any subsequent bills, and this additional time was given to the government solely because the General Accounting Office was required to pay the carrier's bills "upon presentation * * *, prior to audit or settlement * * *." Of course, if the Comptroller General already had the power, under the previously enacted 31 U.S.C.A. § 71 and other statutes authorizing the withholding of money, to "pay" creditor's claims by merely unilaterally applying amounts allegedly due the United States, regardless of the nature of, or time limitation on, the government's claim, there would be no need for the express reservation in the statute of the right to off-set claims of the

4. United States v. Seaboard Air Line Ry. Co., 4 Cir., 22 F.2d 113. Compare 31 U.S.C.A. § 71, with 49 U.S.C.A. § 66.

United States against carriers' subsequent bills.

■ Thus it is abundantly clear to us, and we so hold, that the unilateral withholding and applying of money allegedly due the United States on a disputed claim against a creditor does not constitute payment of that creditor's claim against the United States.[5]

Had we agreed with appellant's view that the period of limitations had not run against the government damage claim one might suppose, from the arguments advanced in appellant's brief, that it might be a hardship for the government to pay the Grace claim only to sue for the recovery of the same funds or a part thereof in an action against Grace on the damage claim. But the applicable procedure is clearly set forth in 31 U.S.C.A. § 227. Where a claim, such as the Grace claim for freight charges, is undisputed, the government may let the case proceed to judgment, after which Section 227 in terms provides that "it shall be the duty of the Comptroller General of the United States to withhold payment of an amount of such judgment equal to the debt" due to the United States. In the event that the claimant does not acquiesce in the withholding but denies his indebtedness to the United States, Section 227 continues, "then the Comptroller General of the United States shall withhold payment of such further amount of such judgment as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment," and "if such debt is not already in suit, it shall be the duty of the Comptroller General of the United States to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch."

■ Appellant also attacks the ruling of Judge Herlands to the effect that appellant's damage claim was unrelated to the claim for the unpaid balance of freight charges alleged in the libel and hence was not within the admiralty jurisdiction, which only extends to set-offs arising out of the same transaction as that on which the libel is based. But this is the well settled admiralty practice, as Supreme Court Admiralty Rule 50, 28 U.S.C.A. and the Southern and Eastern District Court Admiralty Rules 16 and 17 implicitly require that the set-off arise out of the same transaction. We have repeatedly so held, and as recently as 1951. Ozanic v. United States, 2 Cir., 188 F.2d 228; Castner, Curran & Bullitt, Inc., v. United States, 2 Cir., 5 F.2d 214; United Transportation & Lighterage Co. v. New York & Baltimore Transp. Line, 2 Cir., 185 F. 386.

The first point made by appellant on this phase of the case need not long detain us. The substance of this point is that the real controversy between the parties was the damage claim which we have already determined was time barred, and that Grace has limited the government's assertion of this claim "by artificial methods of framing (its) * * * libel." In other words, although Grace has not received the balance due for its freight charges, and asserts in its libel only its claim for the payment of this balance, appellant argues that there is really no dispute about the validity of the claim for freight charges, that this is a purely fictitious issue and that the claim is made in admiralty to foreclose the assertion by appellant of its unrelated damage claim. But there is nothing in this, nor do the cases relied on by appellant so hold. In each of these cases the state of the pleadings was such that the issues litigated and decided were properly before the court. Kreitmeyer v. Baldwin Drainage District, D.C.S.D. Fla., 2 F.Supp. 208, 210, affirmed sub nom. Florida National Bank of Jacksonville v. Hemphill, 5 Cir., 68 F.2d 785; Eastern Transportation Co. v. Blue Ridge Coal Co., 2 Cir., 159 F.2d 642;

---

5. See also, Climatic Rainwear, Inc., v. United States, 88 F.Supp. 415, 115 Ct.Cl. 520.

Alcoa Steamship Co. v. United States, D.C., 80 F.Supp. 158, reversed, 2 Cir., 175 F.2d 661, affirmed 338 U.S. 421, 70 S.Ct. 190, 94 L.Ed. 225.

In the case at bar the subject-matter of the libel was the alleged debt of the United States to Grace arising out of the 1954–1955 shipments, and there is no relationship whatever between this claim asserted in the libel and the claim asserted by the government. No amount of pleading can alter the fact that in this case there is no affirmative defense raised by the government, but rather an attempt to interpose a set-off which is barred by established admiralty procedure.

Appellant's other points are equally unpersuasive. It is idle to cite the numerous general statements in the authorities to the effect that admiralty practice is "nontechnical, flexible and plastic," and to emphasize the liberality of the Federal Rules of Civil Procedure and the modern tendency to discard procedural impediments to the administration of justice in the courts. There must be rules to govern such matters as joinder of parties and claims, set-offs, counterclaims and third party practice; and here we have a rule which has stood the test of time and has been applied again and again. We are not at liberty to disregard or overrule it.

Appellant also contends, in this connection, that, even if the admiralty rules prevent the pleading of unrelated set-offs, such a procedural limitation is overcome by the statutory plan which gives the General Accounting Office the "substantive right" to withhold and apply money due a creditor. This argument that the admiralty procedural rule deprives the government of a substantive right is untenable The substantive right of the government in the case at bar is its claim for damages resulting from Grace's alleged mishandling of the 1952–1953 shipments. The admiralty rule respecting set-offs is merely part of a congeries of procedural provisions, including the statutes establishing the government's right to withhold and apply, which do not affect the substantive rights of the parties in the case at bar.

Appellant also argues that, even if the strict admiralty rule respecting set-offs is to be applied in this case, the 1952–1953 and 1954–1955 shipments were "merely fragments of a single vast overall transaction" between Grace and the United States. However, the only connection between the shipments during the two separate periods is that both were undertaken by the same shipper, Grace, and, in our view, this alone cannot bring the dealings within the concept of a single transaction. Thus we hold that the court below correctly sustained Grace's exception to the governments pleading of its unrelated set-off.

The final point with which we must deal is the trial court's award of interest at 4% per annum from the date of the decree until the decree is paid, on the composite amount of the sum sought in the libel plus interest at 4% per annum on this amount from the date of filing the libel until the date of the decree. Appellant argues that the court below lacked the power to award this "compound interest." However, Section 3 of the Suits in Admiralty Act, 46 U.S. C.A. § 743 provides that "* * * when the decree is for a money judgment, interest at the rate of 4 per centum per annum until satisfied * * *" may be included in the decree against the United States, and that "(i)nterest shall run as ordered by the court * * *" There is no showing that the discretion vested in the trial court was abused by the decree in the case at bar. See National Bulk Carriers v. United States, 3 Cir., 169 F.2d 943, 951.

Affirmed.

WATERMAN, Circuit Judge (concurring).

I concur with the majority in affirming the judgment of the District Court. I disagree with my colleagues, however, in their characterization of the Government's position with respect to the defense of "payment." I do not under-

stand the Government to argue that the "withholding and applying" procedure which it contends is authorized by 31 U.S.C.A. § 71 "makes it unnecessary for the Government to prove its claim on the merits \* \* \*." I understand the Government's position to be that the merits of its claim may be adjudicated by a court of competent jurisdiction in an action brought by Grace Line to recover for the alleged wrongful withholding and that the Government does not intend to "by-pass the process of adjudication." Consistent with the position I understand the Government to have taken here, I note that in the case of Isbrandtsen Co., Inc., v. United States, 2 Cir., 255 F.2d 817, the United States does not deny that the validity of its claim against Isbrandtsen is raised by Isbrandtsen's libel to recover amounts the Government had withheld and applied upon the claim.